**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| EL-BEY *et al.*, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Case No. 2:21-cv-00389** |
| v. | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| WALLACE *et al.*, | : | **Magistrate Judge Karen L. Litkovitz** |
| | : | |
| | : | |
| Defendants. | : | |

**<u>OPINION & ORDER</u>**

This matter comes before this Court on: (1) the Magistrate Judge's August 11, 2022 Report and Recommendation ("R&R") (ECF No. 38) recommending Plaintiff's Second Motion for Default Judgment (ECF No. 19) be denied; (2) the Magistrate Judge's June 21, 2022 R&R (ECF No. 26) recommending that Plaintiff's Motion for Summary Judgment (ECF No. 20) be denied as premature; and (3) Defendants' Motion to Dismiss (ECF No. 35). Plaintiff timely objected to both R&Rs and the Motion to Dismiss. (ECF Nos. 28; 39; 37). This Court rules as follows:

**(1)** Plaintiff's Objections to the August 11, 2022 R&R (ECF No. 36) are **OVERRULED**, the August 11, 2022 R&R (ECF No. 38) is **ADOPTED,** and Plaintiff's Second Motion for Entry of Default (ECF No. 19) is **DENIED**.

**(2)** Plaintiff's Objections to the June 21, 2022 R&R (ECF No. 28) are **OVERRULED**, the June 21, 2022 R&R (ECF No. 26) is **ADOPTED**, and Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED** as premature.

1

**(3)** Pursuant to 28 U.S.C. § 1915A, this Court **DISMISSES** all claims against the City of Franklin, the Franklin Police Department, and to the extent pled, the officer defendants in their official capacities. Plaintiff may **PROCEED** on his claims against the City of Franklin police officers in their individual capacities. Additionally, Defendants' Motion to Dismiss (ECF No. 35) is:

○ **GRANTED** as it pertains to the following actions: (1) the initial traffic stop; (2) Defendants' request for Plaintiff's identification or social security number; (3) Plaintiff's claim that Defendants harassed him by shining a flashlight into the vehicle and threatening to bust through the vehicle's window; and

○ **DENIED** as it pertains to Plaintiff's claims of: (1) Defendants unlawfully frisking and searching Plaintiff upon removal from the vehicle; (2) unlawful use of force against Plaintiff when removing him from the vehicle; (3) unlawful arrest based on Plaintiff's outstanding warrants; (4) unlawful arrest based on Plaintiff's seatbelt violation; and (5) unlawful arrest based on allegations that Plaintiff obstructed official police business.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff J'ttonali One Eye El-Bey brings the present action against the City of Franklin, the City of Franklin Police Department, and City of Franklin Police Officers L. Wallace, G. Rossel, Butler, Holland, S. Davis, and E. Diekman. He alleges that he and a Nichole L. Taylor[1] were

---

[1] The Complaint (ECF No. 1) originally included Nichole L. Taylor as a second pro se plaintiff. On June 14, 2021, this Court ordered Plaintiffs to pay the full filing fee of $402 and advised Plaintiffs that, if they were unable to afford the filing fee, they must each submit an application and affidavit to proceed *in forma pauperis* no later than July 14, 2021. (ECF No. 2). As Ms. Taylor neither paid the filing fee nor filed the required application and affidavit, her claims were dismissed from this case on July 26, 2021. (ECF No. 5).

driving in Franklin, Ohio on May 24, 2021, when law enforcement officers "without any lawful purpose" stopped their vehicle and "detained, threatened, assaulted, frisked, and arrested" Plaintiff. (ECF No. 1 at 1). While waiting to take a left turn during a drive from their home to a Walmart, Plaintiff alleges that Ms. Taylor, the driver, was forced to enter the wrong side of the road to avoid being hit by a speeding car. (ECF No. 28 at 2). Shortly thereafter, they were pulled over by a City of Franklin police vehicle driven by Officer Wallace—the same vehicle which Plaintiff alleges was speeding and almost hit them. (*Id.*). Defendants counter that Ms. Taylor was pulled over after committing a traffic violation by cutting a turn in a lane short to speed through a light. (ECF No. 35 at 2). When Defendant Officer Wallace approached the vehicle, she requested Ms. Taylor's license and insurance, which Ms. Taylor provided, "without delay." (ECF No. 28 at 3).

Plaintiff maintains that even though he was a passenger, Defendant Wallace then asked for Plaintiff's identification or social security number despite lacking legal authority. (*Id.*). Plaintiff alleges that Officer Wallace told him he was being ordered to provide his name and social security number per Ohio Revised Code ("Ohio Rev. C.") § 2921.29(a)(1),[2] but Plaintiff refused. (*Id.*). During the ensuing fifty minutes, the other officer defendants arrived. (ECF Nos. 28 at 3; 35 at 2). According to an affidavit provided by Ms. Taylor, the back-up officers harassed the occupants of the vehicle by standing with a flashlight against the passenger window, threatening to "bust the window" of the vehicle, and using "full scare tactics." (ECF No. 1 at 2). Plaintiff alleges that Officer G. Rossel and two to three other officers attempted to open the passenger side door, but Plaintiff refused to unlock the door because he believed the officers were acting unlawfully and Plaintiff was being "racially profiled." (ECF No. 28 at 10). While Plaintiff live streamed the event

---

[2] O.R.C. § 2921.29(a)(1) provides: "No one who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects . . . [t]he person is committing, has committed, or is about to commit a criminal offense."

3

from his smart phone, he alleges that the other officers forcefully removed Plaintiff and Ms. Taylor from the vehicle when they refused to comply with orders to exit the vehicle. (*Id.* at 3). Plaintiff alleges that he was "slammed to the conveyance, handcuffed, searched" and the officers seized some personal items from him. (*Id.* at 10–11). Defendants argue that Plaintiff had outstanding warrants, so he was detained properly and transported to the Warren County Jail in Lebanon, Ohio and Ms. Taylor was released. (*Id.* at 3–4; ECF No. 35 at 2). Plaintiff maintains that Officers Wallace and Davis conspired to lie to jail officials by stating that Plaintiff had committed a felony, as the jail was unwilling, due to COVID-19 protocols, to open a bed for an "alleged misdemeanor accusation." (ECF No. 28 at 12). Plaintiff is currently detained in Butler County Jail in Hamilton, Ohio on other charges.

While it is not entirely clear what claims Plaintiff raises, it appears he alleges that Defendants violated his constitutional rights under color of state law during the arrest and subsequent detention, in violation of 42 U.S.C. § 1983. While Plaintiff does not specifically state that he seeks damages, this Court construes his reference to the fact that this court must "ascertain the damages which must be proven" as seeking damages as relief. (ECF No. 37 at 3–4). Plaintiff also states he is a Moorish American National of the Moorish American National Indigenous Tribal Government/Enterprise who travels under a Moorish travel document. (ECF Nos. 1 at 27; 6 at 1–2). Therefore, Plaintiff asserts that he is considered sovereign and should be afforded complete sovereign immunities. (ECF No. 19 at 1).

### B.    Procedural Background

On June 9, 2021, Plaintiff filed the present, pro se action against the City of Franklin, Ohio, the City of Franklin Police Department, and several Franklin City police officers. (ECF No. 1). This Court granted Plaintiff leave to proceed in forma pauperis on July 26, 2021. (ECF No. 5). On

4

August 12, 2021, Plaintiff filed an amendment to the Complaint, appearing to add additional law enforcement defendants to the present action. (ECF No. 6 at 1). Subsequently, Plaintiff filed a Motion for Consolidation of the Action (ECF No. 11), a Motion for Appointment of Counsel (ECF No. 14), the First Motion for Default Judgment (ECF No. 16), and a Second Motion for Default Judgment (ECF No. 19). On June 21, 2022, the Magistrate Judge held in abeyance the Second Motion for Default Judgment and denied the remaining motions. (ECF No. 23). The Magistrate Judge also ordered Defendants to show cause why Plaintiff's Second Motion for Default Judgment should not be granted as Defendants had yet to respond. (*Id.*). Prior to the Magistrate Judge's opinion on the other motions, Plaintiff filed a Motion for Summary Judgment (ECF No. 20) and an Application to the Clerk for Entry of Default (ECF No. 21) on May 9, 2022. On June 21, 2022, the Clerk made an Entry of Default as to the Defendants. The same day, the Magistrate Judge issued an R&R recommending that this Court deny Plaintiff's Motion for Summary Judgment (ECF No. 20) as premature. (ECF No. 26). The Plaintiff filed objections on June 30, 2022, well within the deadline to respond. (ECF No. 28).

On July 12, 2022, the Defendants filed a Motion to Set Aside Entry of Default, arguing they were unaware they had been served with Plaintiff's Complaint and Amended Complaint and had no intention "to thwart, delay or obfuscate this case." (ECF No. 31 at 2). They also argued that once they received notice through the Court's Show Cause order, they timely responded. (*Id.*). That same day, they also responded to the Show Cause Order alleging they were not physically served with copies of Plaintiff's Complaint or Summons, in part due to the Southern District of Ohio's policy under General Order No. 20-39 providing for service allowance without effectuation due to the COVID-19 pandemic. (ECF No. 33 at 1–2). Defendants also filed a Motion for Leave to File (ECF No. 34) a responsive pleading and a Motion to Dismiss (ECF No. 35). Plaintiff

5

responded to the Motion to Dismiss on July 22, 2022. (ECF No. 37). On August 11, 2022, the Magistrate Judge issued an R&R (ECF No. 38) recommending this Court deny Plaintiff's Second Motion for Default (ECF No. 19), granted the Defendants' Motion to Set Aside Entry of Default (ECF No. 31), and granted Defendants' Motion for Leave to File a Responsive Pleading (ECF No. 34). Plaintiff filed an objection and Defendants responded. (ECF Nos. 39; 40). Because Plaintiff has timely filed objections to both the R&Rs and Defendants' Motion to Dismiss (ECF Nos. 28; 39; 37), Plaintiff's Second Motion for Default Judgment (ECF No. 19), Plaintiff's Motion for Summary Judgment (ECF No. 20), Defendants' Motion to Dismiss (ECF No. 35), and this Court's two R&Rs (ECF No. 26; 38) are ripe for review.

## II.    REPORTS & RECOMMENDATIONS

If a party objects within fourteen days to the magistrate judge's proposed findings and recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The district court may "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." Fed. R. Civ. P. 72(b).

A party's objection should be specific, identify the issues of contention, and "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The onus is on the objecting party "to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quotation marks and citation omitted). When a pleader fails to raise specific issues, the district court will consider this to be "a general objection to the entirety of the magistrate report[, which] has the same effects as would a failure to object."

*Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Finally, allegations in a *pro se* complaint are subject to "'less stringent standards than formal pleadings drafted by lawyers, and therefore should be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). But even "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (internal citations omitted). As Plaintiff is a pro se litigant, this Court will evaluate Plaintiff's argument under the less stringent pro se standards.

### A.    Motion for Default Judgment

#### 1.    Standard of Review

Federal Rule of Civil Procedure 55 governs defaults and default judgments. The first step is entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default is entered, a party may take the second step by moving for default judgment. Fed. R. Civ. P. 55(b). At that stage, all factual allegations of a complaint will be taken as true, except those related to damages. *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022); *see also Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) ("the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.") (internal quotation marks omitted). "An entry of default does not automatically entitle the plaintiff to a default judgment." *Methe v. Amazon.com.dedc, LLC*, 2019 WL 3082329, at *1 (S.D. Ohio July 15, 2019). A "plaintiff must still show that, when all of the factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." (*Id.*)

7

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." This Court must consider three factors in determining whether an entry of default should be set aside: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's culpable conduct led to default. *U.S. v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010). "[D]elay alone is not a sufficient basis for establishing prejudice . . . [as] it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). It is well established that "when a defendant has a meritorious defense and the plaintiff would not be prejudiced, 'it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead.'" *$22,050.00 U.S. Currency*, 595 F.3d at 324. Where there is "no pattern of disregard for court orders or rules," there is a "strong policy in favor of deciding cases on their merits" which outweigh any inconvenience to the court or plaintiff resulting from the defendant's delay in answering. *Shepard Claims Serv., Inc. v. Williams Darrah & Assoc.*, 796 F.2d 190, 192 (6th Cir. 1986).

## 2. *Legal Analysis*

This Court is not required to consider the merits of Plaintiff's Motion for Default Judgment because good cause exists to set aside the Clerk's Entry of Default (ECF No. 24) against Defendants. Beginning with the first and third factors, this Court agrees that "there is no evidence of prejudice or willful disregard of court orders or rules" by Defendants. (ECF No. 38). Plaintiff has failed to show that this delay has prejudiced him. *See Oppenheimer v. City of Madeira, Ohio*, 336 F.R.D. 559, 565 (S.D. Ohio 2020) (explaining that if plaintiff could show that default would

8

"result in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," then that could demonstrate prejudice against plaintiff) (internal citations omitted). Plaintiff's Objections to the August 11, 2022 R&R appear to reference only minimally Defendants' Motion for Default, arguing that the Summons was executed on January 1, 2022, but not referencing that service was not effectuated due to COVID-19 protocols. (ECF Nos. 39 at 1; *see also* 18). Other than this reference, Plaintiff's Objections focus entirely on the merits of his case, re-detailing the events of the traffic stop. (ECF No. 39 at 1–7).

Regarding whether the Defendants' culpable conduct led to the default, Defendants were unaware that Plaintiff had filed this action, and due to the complications of COVID-19, never received the Summons and Complaint. (ECF Nos. 18 (indicating that the Summons was returned executed, but not effectuated because of COVID-19); No. 33 at 1–2). Upon receiving this Court's Show Cause Order, however, Defendants timely filed a Motion to Set Aside Default and for Leave to File. (ECF Nos. 31; 34); *see also Wilson v. Blanton*, No. 2:16-CV-00390, 2016 WL 5408889, at *3 (S.D. Ohio Sep. 28, 2016) (granting defendant's motion for relief from entry of default even though his answer was not filed, where defendant took immediate action to remedy the circumstances which caused the default and expediently filed a motion for relief). Therefore, the delay was not the result of Defendants' culpable conduct.

Regarding the second factor, it is well settled that "[a] defense is 'meritorious' if it is 'good at law.'" *Dassault Systemes*, *SA v. Childress*, 663 F.3d 832, 843 (6th Cir. 2011). The standard is not that the defense be likely to succeed, but that by a "hint of a suggestion" the defense is meritorious. *Id.* Pursuant to Rule 8(c)(1) of the Federal Rules of Civil Procedure a party is only required to "affirmatively state any . . . affirmative defense." *Ruff v. Credit Adjustment, Inc.*, No.

2:18-cv-351, 2018 WL 4019464, at *2, (S.D. Ohio Aug. 23, 2018). This Court finds that Defendants have stated a meritorious defense.

In their responsive Motion to Dismiss, Defendants argue that the police officers did not violate the law when they pulled over Ms. Taylor's vehicle, asked for both her and the Plaintiff's identification, and removed them from the vehicle. (ECF No. 35 at 4 (citing *Whren v. U.S.*, 517 U.S. 806, 810 (1996) (holding that a "decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred"); *Rodriguez v. U.S.*, 575 U.S. 348, 354–55 (2015) (holding that that the questioning of a driver that does not unreasonably lengthen a traffic stop—which can include checking a driver's license and determining whether outstanding warrants exist—is constitutional and does not violate the rights of an individual); *U.S. v. Harper*, 488 Fed. App'x 63, 66 (6th Cir. 2012) (explaining that the use of a flashlight to look inside a vehicle during a valid traffic stop is not unconstitutional)). While Defendants fail to cite the appropriate law for whether police can ask for the identification of a passenger, the Sixth Circuit has held that police officers can ask a passenger to exit the vehicle and provide identification where the officer has reasonable suspicion to fear for the officer's safety. *U.S. v. Bah*, 794 F.3d 617, 626–627 (6th Cir. 2015). In response to Plaintiff's allegations that his rights were violated when he was arrested and transported to the Warren County Jail, Defendants argue that it is constitutional for police officers to detain an individual with outstanding warrants, so long as the individual is given a pretrial determination within a reasonable period of time. (ECF No. 35 at 5); *see also U.S. v. Lengen*, 245 Fed. App'x 426, 431 (6th Cir. 2007) (explaining that following a lawful traffic stop, police officers are entitled to arrest passenger on outstanding felony warrants). These are sufficiently stated affirmative defenses to meet the standard for setting aside an entry of default.

Because all three factors favor Defendants, the record reflects good cause to set aside an entry of default under Rule 55(c). Therefore, Plaintiff's Objections (ECF No. 39) are **OVERRULED,** the August 11, 2022 R&R (ECF No. 38) is **ADOPTED**, and Plaintiff's Second Motion for Entry of Default (ECF No. 19) is **DENIED**.

### B.    Motion for Summary Judgment

#### 1.    Standard of Review

Federal Rule of Civil Procedure 56(a) states, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the non-movant's favor. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). But "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," the court must find that there is a "genuine" dispute of material fact and that summary judgment is inappropriate. *Anderson*, 477 U.S. at 248.

The initial burden rests upon the movant to present the Court with law and argument in support of its motion, and to identify the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then

11

shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (noting that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

### 2. *Legal Analysis*

The Magistrate Judge's R&R correctly states that Plaintiff's one-page Motion for Summary Judgment offers no evidence in support of summary judgment. (ECF Nos. 20; 26 at 3). He simply states that an arrest constitutes a seizure under the Fourth Amendment but does not connect the statement of law with the facts of the case. (ECF No. 20). The R&R also recommends this Court find Plaintiff's Motion for Summary Judgment premature because he filed it prior to the Defendants appearing in the action. (ECF No. 2 at 3). While Plaintiff's Objections to the June 17, 2022 R&R provide a detailed accounting of the events of the traffic stop and his subsequent arrest, during which he believes his constitutional rights were violated, this Motion for Summary Judgment was premature. (ECF No. 28).

It is well established in the Sixth Circuit that a "grant of summary judgment, 'absent *any* opportunity for discovery,' is an abuse of discretion." *Moore v. Shelby County, Ky.*, 718 Fed. App'x 315, 320 (quoting *White's Landing*, 29 F.3d 229, 231 (6th Cir. 1994)). In *Moore*, Defendants filed for summary judgment eight days after the district court entered its scheduling order, and parties agreed to stay discovery while the court considered the motion and before any discovery occurred. *Id.* at 317. The Sixth Circuit found that the district court had abused its discretion in granting summary judgment for the Defendants reasoning that summary judgment requires an inquiry into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

12

*Id.* at 320 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). The Court continued that "[c]ommon sense dictates that before a district court tests a party's evidence, the party should have the opportunity to develop and discover the evidence." *Id.* The Sixth Circuit has upheld cases granting summary judgment prior to discovery, but such decisions are considered extraordinary, not the norm. *Local Union 369, Int'l Bhd. of Elec. Workers v. ADT Sec. Servs., Inc.*, 393 Fed. App'x 290, 295 (6th Cir. 2010) (upholding district court decision to grant summary judgment before discovery where the facts for which the union sought discovery were irrelevant to the dispositive issue of whether the union had exhausted its contractual grievance process).

Similar to *Moore*, neither party here had *any* opportunity for discovery. Further, Defendants here are prejudiced by their inability to conduct at least some discovery, because the evidence they may have ultimately produced could influence this Court's perception of whether a genuine factual dispute existed. Therefore, it would be an abuse of this Court's discretion to grant Plaintiff's Motion for Summary Judgment. (ECF No. 20). Accordingly, this Court **OVERRULES** Defendant's Objections (ECF No. 28), **ADOPTS** the June 17, 2022 R&R (ECF No. 26), and **DENIES** Defendant's Motion for Summary Judgment as premature. (ECF No. 20).

### III.    MOTION TO DISMISS

#### A.    28 U.S.C. § 1915A Initial Screening

##### 1.    *Standard of Review*

In actions brought by "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," the Court must dismiss any complaint, or portion thereof, that is "frivolous, malicious, fails to state a claim . . . [or] seeks monetary relief from a defendant who is immune to such relief" in its initial screening. 28 U.S.C. § 1915A(a)–(b). This includes actions brought against non-correction facilities government employees such as police officers.

*See Watson v. Baxter*, 35 F. App'x 118, 119–20 (6th Cir. 2002) (concluding that the district court, pursuant to 28 U.S.C. §1915A(b)(1), properly dismissed prisoner plaintiff's Fourth Amendment allegations against police officers who arrested Plaintiff for failure to state a claim).

This Court assesses whether a plaintiff has stated a claim under § 1915A under the same framework as the Rule 12(b)(6) dismissal standard outlined in *Ashcroft v. Iqbal*, 556 U.S 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—that is, to survive the initial screening, a prisoner's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lappin*, 630 F.3d 468, 570–71 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). And though the court "need not accept as true a legal conclusion couched as a factual allegation," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).

*2.     Legal Analysis*

As previously outlined, 28 U.S.C. § 1915A(a)–(b) requires this court to dismiss actions brought by prisoners seeking "monetary relief from a defendant who is immune to such relief" in its initial screening. 28 U.S.C. § 1915A(a)–(b). It is well established that state officials are not subject to and immune from suit for monetary damages in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71(1989). If an action is brought against an official of a

governmental entity only in his official capacity, the suit is construed as brought against the government entity. *Id.* at 68. A Plaintiff, however, can bring a § 1983 claim against a state official, which instead seeks to hold the official personally liable for the wrong alleged. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). On the merits, to establish personal liability in a § 1983 action, it is sufficient for the Plaintiff to show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* (citing *Ky. v. Graham*, 473 U.S. 159, 166 (1985)). Further, municipal entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Watson*, 35 Fed. App'x at 120. The Plaintiff, however, must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 36 –64 (6th Cir. 1993).

As explained fully below, Plaintiff pleads facts sufficient to state a claim for violation of his constitutional rights related to certain actions taken by Defendants during the traffic stop. Because the parties also agree that Defendants were acting under the color of state law, Plaintiff meets the requirements of pleading an individual capacity § 1983 claim against the officer defendants. Plaintiff, however, fails to identify any policy of the City of Franklin Police Department or the City of Franklin that's execution resulted in his alleged harm during the traffic stop. Therefore, the City of Franklin and the City of Franklin Police Department are immune and cannot be held responsible for any alleged constitutional deprivation of Plaintiff's rights.

Based on the governing precedent and for the reasons explained more fully below, this Court allows Plaintiff to **PROCEED** on his claims against the City of Franklin police officers, in their individual capacities, for: (1) unlawful use of force against Plaintiff when removing him from

the vehicle; (2) unlawfully conducting a frisk and search of Plaintiff's person following his removal from the vehicle; (3) unlawful arrest based on Plaintiff's outstanding warrants; (4) unlawful arrest based on Plaintiff's seatbelt violation; and (5) unlawful arrest based on allegations that Plaintiff obstructed official police business. This court **DISMISSES** all remaining claims against the officer defendants in their individual capacity and claims by Plaintiff against the officer Defendants in their official capacity, the Franklin Police Department, and the City of Franklin pursuant to 28 U.S.C. § 1915A. Therefore, hereinafter, all reference to "Defendants" refers only to the individual officer defendants in their personal capacities.

## B.    Motion to Dismiss Standard of Review

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

This Court is not required to accept as true mere legal conclusions unsupported by fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative

16

level." *Bell Atl. Corp.*, 550 U.S. at 555. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### C.    Defendants' Argument

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because it is unclear what claims Plaintiff brings and what relief he seeks. (ECF No. 35 at 2). First, Defendants maintain that they did not violate his constitutional rights when they stopped, detained, threatened, assaulted, frisked, arrested, and transported" (ECF No. 1 at 1) Plaintiff, reasoning that "it is permissible to request documentation during a legitimate traffic stop" and "a claim under 42 U.S.C. § 1983 fails to state a claim as a matter of law when the allegations related to an objectively valid basis for a traffic stop." (ECF No. 35 at 2 (citing *Glasscock v. Mt. Orab*, No. 1:15-cv-454, 2016 WL 7971731, at *3 (S.D. Ohio Dec. 22, 2016)). Further, Defendants argue that it is "legally frivolous" to claim that request for documentation during a traffic stop is a violation of one's constitutional rights because police officers can question a passenger as long as they do not unreasonably lengthen a traffic stop. (*Id.* at 4 (citing *Glasscock*, 2016 WL 7971731, at *5)). Second, Defendants allege that Plaintiff never indicates how he was threatened or assaulted by the officers, except to say that the officers shined a flashlight inside the window of the vehicle, which they argue is constitutional during a valid traffic stop. (*Id.* (citing *Harper*, 488 Fed. App'x 63, 66 (6th Cir. 2012) (citing *Texas v. Brown*, 460 U.S. 730 (1983)). Third, Defendants counter that Plaintiff's constitutional rights were not violated when he was arrested and transported to Warren County Jail as police officers can apprehend and detain an individual with outstanding warrants. (*Id.* at 5 (citing *Riverside v. McLaughlin*, 500 U.S. 44 (1991)). Finally, Defendants argue that

Plaintiff never states the relief he seeks, and therefore, Defendants cannot defend against this claim if they do not know what Plaintiff is alleging and what Plaintiff seeks as relief. (*Id.*).

### D. Plaintiff's Argument

Plaintiff responds by again providing a summary of events leading up to and including the traffic stop. (ECF No. 39). He also appears to argue that his Second Motion for Default Judgment (ECF No. 19) should be granted because Defendants were given "more than enough time" to respond. (ECF No. 39 at 1). Defendant references a few federal and state statutes: the Fourth Amendment; 42 U.S.C. §§ 1981, 1983, 1985; 28 U.S.C. § 1746; Federal Rule of Civil Procedure 41; and Ohio Rev. C. § 2921.29. (ECF No. 39). Although it is unclear what the vast majority of these legal references are related to, Plaintiff generally asserts that the officers violated his constitutional rights during the traffic stop, used unlawful force, racially profiled him, threatened to charge him with a felony, and without legal authority, arrested and detained him. (*Id.*). Finally, Plaintiff states he has no intention of amending the complaint, which was properly served on Defendants, but asks for any "dash/body cam, videos, and documents." (*Id.* at 3, 6)

### E. Legal Analysis

This Court and Defendants construe Plaintiff's allegations to raise a claim for violation of constitutional rights under the Fourth Amendment and 42 U.S.C. § 1983. Therefore, this court will evaluate Plaintiff's Complaint with respect to the following actions taken by Defendants: (1) the initial traffic stop; (2) Defendants' request for Plaintiff's identification or social security number; (3) Plaintiff's claim that Defendants harassed him by shining a flashlight into the vehicle and threatening to bust through the vehicle's window; (4) the force used to remove Plaintiff from the vehicle; (5) frisking and searching Plaintiff upon removal from the vehicle; (6) Plaintiff's arrest

18

based on his outstanding warrants; (7) Plaintiff's arrest based on a seatbelt violation; and (8) Plaintiff's arrest based on obstruction of official business.

Section 1983 prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges, or immunities secured by the constitution and laws." 42 U.S.C. § 1983. Section 1983 is a remedial statute which does not create independent substantive legal rights on its own, but simply provides a vehicle by which a person may impose civil liability on state actors for violation of rights secured to the individual by federal law. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a §1983 claim, a plaintiff must demonstrate that: (1) he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of law. *Robertson v. Lucas*, 753 F. 3d 608, 614 (6th Cir. 2014) (citing *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971)). Defendants do not contest that the officers were acting under the color of law when they conducted the traffic stop. Therefore, the Court focuses its analysis on whether Defendants' actions as described in the complaint can plausibly amount to a violation of an established constitutional right. Plaintiff's allegations against Defendants may be liberally construed as claims that the officers violated the Fourth Amendment's prohibition against unreasonable seizure. (ECF No. 1 at 1). The Fourth Amendment to the United States' Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Therefore, this Court will analyze whether the following claims constitute a violation of the Fourth Amendment to the U.S. Constitution.

19

1.  *Initial Traffic Stop*

Defendants argue in their Motion to Dismiss that Plaintiff "fails to state a claim as a matter of law [under 42 U.S.C. § 1983] when the allegations [are] related to an objectively valid basis for a traffic stop." (ECF No. 35 at 3). Defendants point to Ms. Taylor affidavit to argue that she admitted to committing the traffic violation, and therefore, Defendants had probable cause to stop the vehicle. (*Id.* (citing ECF No. 1 at 2–3; *Whren*, 517 U.S. at 810; *U.S. v. Ferguson*, 8 F.3d 285, 291 (6th Cir. 1993)).

The first issue here, however, is whether Plaintiff has standing under the Fourth Amendment to challenge the legality of the stop since Plaintiff was a passenger, not the driver of the vehicle. The Fourth Amendment protects an individual's right to be free from an unreasonable search or seizure. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961). In conducting a traffic stop, a police officer seizes both the driver and the passenger(s) of the vehicle within the meaning of the Fourth Amendment. *Brendlin v. Cal.*, 551 U.S. 249, 257–59 (2007) (explaining that a "traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver"). Therefore, it is well established that a passenger has standing to bring a Fourth Amendment challenge to the legality of the traffic stop. *Id.* at 259. Based on the facts alleged, Plaintiff has standing to challenge the legality of the traffic stop because he was also seized by Defendants at the time.

A traffic stop may be considered reasonable "so long as the officer has probable cause to believe that the motorist has violated the traffic law." *U.S. v. Tubbs-Smith*, 800 Fed. App'x. 349, 352 (6th Cir. 2020) (quoting *U.S. v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Whether an officer has probable cause to believe that a traffic violation has been committed depends on whether they "have reasonable grounds for belief supported by more than a mere suspicion. *Tubs-Smith*, 800 Fed. App'x. at 352 (citing *U.S. v. Jackson*, 470 F.3d 299, 30 (6th Cir. 2006)). An officer's

20

observation of a traffic violation suffices to provide probable cause to stop a car for "any infraction, no matter how slight." *See Blair*, 524 F.3d at 748–49 (holding that the officer had probable cause to stop defendant for a tag light violation after being unable to make out the tag because the operating lamp was not working); *but see State v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (concluding that observing a motor home partially weave into the emergency lane one time did not provide probable cause that a traffic violation occurred). Offered explanations for committing the traffic violation do not necessarily negate the officer's probable cause nor render the subsequent stop unlawful. *U.S. v. Sanford*, 476 F.3d 391, 395–96 (6th Cir. 2007) (officer had probable cause to conduct a traffic stop after observing the car drive within ten feet of the one in front of it for a moment while waiting for another car to pass in the left lane).

Plaintiff has failed to plead a plausible claim that the traffic stop by Defendants constituted a violation of the Fourth Amendment. In the Complaint and Ms. Taylor's affidavit, both parties admit that Ms. Taylor "cut [the lane] short" to complete the left turn. (ECF No. 1 at 2). Cutting the turn short generally means that the driver cut across the middle lane in order to complete the left turn. In Ohio, a driver commits a minor misdemeanor if the driver fails to make a left turn at an intersection by "passing to the right of the center line." Ohio Rev. C. § 4511.36(A)(2). Plaintiff alleges that after Ms. Taylor committed the traffic violation, Defendant Wallace conducted the traffic stop. (ECF No. 1 at 2). Plaintiff offers no "factual content that allows the court to draw the reasonable inference that the defendant is liable" for an unlawful traffic stop. *Iqbal*, 556 U.S. at 678. In fact, Plaintiff's Complaint admits that a traffic violation occurred. It is well established that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred." *Whren*, 517 U.S. at 810. Probable cause exists where the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person . .

21

. in believing . . . that the suspect committed, is committing, or is about to commit an offense. *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016) (quoting *Mich. v. DeFillippo,* 443 U.S. 31, 37 (1979)). Therefore, no violation of the Fourth Amendment occurred when Defendants conducted the traffic stop after witnessing Ms. Taylor commit a traffic violation, which Plaintiff also admits occurred. Therefore, the initial traffic stop does not constitute a constitutional violation and Defendant's Motion to Dismiss is **GRANTED** with respect to Plaintiff's claim that Defendant's unlawfully conducted a traffic stop.

### 2. *Subsequent Interactions with Plaintiff During Traffic Stop*

A routine traffic stop is considered similar to a brief investigatory stop, so the analysis for reasonability resembles the factors developed in *Terry v. Ohio,* 392 U.S. 1 (1968). *See Rodriguez*, 575 U.S. at 354. Traffic stop can become unreasonable if the duration extends beyond what is reasonably necessary to effectuate the purpose of the stop, which in the case of traffic stops means addressing the traffic violation. *Id.* Therefore, authority for "the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* To complete the purposes of a traffic stop, an officer may "check[] the driver's license, determine[e] whether there are outstanding warrants against the driver, [ ] inspect[] the automobile's registration and proof of insurance," and request that the occupants exit the vehicle. *U.S. v. Brewer*, 858 Fed. Appx. 888, 890 (6th Cir. 2021). The Sixth Circuit has also held that it is permissible for officers to conduct brief questioning and check passengers for warrants as part of a traffic stop. *U.S. v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010).

Once a traffic stop is justified, however, it will only remain reasonable if the "degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand." *Hoover v. Walsh*, 682 F.3d 481, 497–98 (6th Cir. 2012) (quoting *O'Malley v. City of Flint*,

652 F.3d 662, 670 (6th Cir. 2011)). In determining whether an investigative stop is reasonably related to the basis for the original intrusion, this Court must consider: (1) the length of detention; (2) the manner in which the stop is conducted; and (3) the degree of force used. *Dorsey v. Barber*, 571 F.3d 389, 398–99 (6th Cir. 2008). When evaluating the length of detention, courts "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain" the individual under suspicion. *Hoover*, 682 F.3d at 497–98 (citing *U.S. v. Sharpe*, 470 U.S. 686 (1985)). The means of detention should be the least intrusive necessary to dispel suspicion. *Fla. v. Ryder*, 460 U.S. 491, 501 (1983); *U.S. v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020). Finally, the degree of force used should be reasonable considering the situation at hand. *Dorsey*, 517 F. 3d at 399 (explaining that officers can draw their weapons or use handcuffs during a *Terry* stop "so long as circumstances warrant the precaution") (quoting *Randvansky v. City of Olmsted Falls*, 395 F. 3d 291, 309 (6th Cir. 2005)).

   Despite this previous ruling, the Sixth Circuit, in line with Supreme Court precedent, acknowledges that once the purpose of an underlying traffic stop ends, the police must not detain a vehicle or its occupants absent facts that given rise to a reasonable suspicion of some other violation of law. *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir.), *cert denied*, 141 S. Ct. 847 (2020); *see also U.S. v. Bell*, 555 F.3d 535, 539 (6th Cir 2009) ("To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct."). Reasonable suspicion requires more than a mere hunch. *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002); *see also Navarette v. Cal.*, 572 U.S. 393, 397 (2014). Under the totality of the circumstances Defendants

needed to have had "a particularized and objective basis for suspecting legal wrongdoing." *Arizu*, 534 U.S. at 273; *Navarette*, 572 U.S. at 397.

### a. Request for Identification

Plaintiff alleges that during the traffic stop, Defendants acted beyond their legal authority by requesting his identification and social security number, despite lacking a reasonable basis to do so. (ECF No. 1 at 1–3, 26). Specifically, Plaintiff argues that failure to identify oneself, alone, does not constitute an act of obstruction. (ECF No. 19 at 1). This Court construes these allegations as a claim that Defendant Wallace's conduct of asking for Plaintiff's identification turned the traffic stop unreasonable, despite the initial stop being lawful. Defendants counter that this Court has previously held that, "it is permissible to request documentation during a legitimate traffic stop and that a claim under 42 U.S. § 1983 fails to state a claim as a matter of law when the allegations related to an objectively valid basis for a traffic stop. (ECF No. 35 at 3 (citing *Glasscock*, 2016 WL 7971731, at *5)). As a result, Defendants maintain that their conduct during the traffic stop as it pertains to asking for Plaintiff's identification was reasonable and not in violation of Plaintiff's Fourth Amendment rights. (*Id.* at 4). Therefore, this Court must assess whether Defendants' continued detention of Plaintiff and Ms. Taylor after Ms. Taylor handed over her identification and insurance unreasonably extended the traffic stop beyond its appropriate completion in violation of the Fourth Amendment.

In *Smith*, the Sixth Circuit explained that a police officer's decision to question and ask for driver or passenger identification during a valid traffic stop is not an unnecessary extension of the traffic stop. 601 F.3d at 542. In *Smith*, an officer stopped a vehicle that was traveling seventy-four miles per hour in a seventy mile-per-hour zone. *Id.* The officer asked the driver and passenger questions while issuing the driver a speeding ticket. *Id.* Additionally, the officer asked for

24

identification from both individuals in the vehicle and checked them for outstanding warrants. *Id.* The Court explained that all of these steps were reasonable, standard procedure, and did not lengthen the duration of the stop. *Id.* Additionally, the officer did not need reasonable suspicion of criminal activity to conduct these steps. *Id.* Only when the driver and passenger's stories started to conflict, did the Court find that the officer had reasonable suspicion of criminal activity such that he could extend the traffic stop beyond its original purpose. *Id.*

Similarly, here, Officer Wallace conducted a lawful traffic stop, and it was reasonable for her to request both Ms. Taylor and Plaintiff's identification during the stop. Additionally, Plaintiff fails to plead any facts that indicate Officer Wallace's request for his identification or social security number prolonged the stop beyond what was reasonably necessary for Officer Wallace to investigate. Additionally, while there are no facts provided that indicate Officer Wallace had a reasonable suspicion that further criminal activity was afoot, requesting Plaintiff's identification is a diligent means of investigation to dispel any concerns Officer Wallace may have had. Therefore, Defendants' request for Plaintiff's identification or social security number does not constitute a constitutional violation, and this Court **GRANTS** Defendant's Motion to Dismiss with respect to Plaintiff's claim that Defendants lacked a lawful basis to request Plaintiff's identification.

### b. *Harassment and Verbal Threats*

Defendants minimize Plaintiff's harassment claim to the act of officers shining a flashlight into the vehicle. (ECF No. 35 at 4). Plaintiff, however, alleges that Officer Rossel also threatened to "bust the window out" of Ms. Taylor's car. (ECF No. 1 at 2). Ms. Taylor's affidavit states that the officers attempted to separate her from Plaintiff and use "full scare tactics." (*Id.* at 3). The officers asked Ms. Taylor if she was afraid of Plaintiff, to which Ms. Taylor responded she was

not. (*Id.*). Ms. Taylor states that neither she nor Plaintiff wanted to exit the vehicle because they were both afraid of the officers. (*Id.*).

Regarding these types of claims, courts have recognized that "an individual does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent." *Vasquez v. Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985). It is well established that allegations of verbal harassment against a state agent fail to state a claim under § 1983 because "being placed in fear from spoken words 'is not an actual infringement of a constitutional right'" and "mere 'threat to do an act prohibited by the Constitution' is not 'equivalent to doing the act itself.'" *Newsome v. Erwin*, 137 F.Supp.2d 934, 940 n. 5 (S.D. Ohio 2000) (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) and *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (explaining why allegations that a sheriff threatened to arrest plaintiff if he was "caught on the road" failed to state a claim under § 1983); *see also Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (holding that "[v]erbal harassment and abusive language, while "unprofessional and inexcusable," are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983 because "citizens do not have a constitutional right to courteous treatment by the police"); *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional or reprehensible it might seem,' does not constitute the violation of any federal protected right and therefore is not actionable under 42 U.S.C. § 1983"); *State v. Elizabethtown Police Dep't*, No. 3:09-cv-569, 2010 WL 1196193, at *2 (W.D. Ky. Mar. 23, 2010) (explaining that "[a] police officer's rudeness, verbal harassment, and abusive language are not sufficient to state a constitutional claim under § 1983."); *cf. Wingo v. Tenn. Dep't of Corr.*, 499 Fed. App'x 452, 455 (6th Cir. 2012) ("Verbal harassment

26

or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").

Similar to the plaintiff in *Newsome*, while Plaintiff was seated in the vehicle, Plaintiff only alleges facts that indicate verbal threats from the police officers and nothing more. While Plaintiff argues that the officers used scare tactics through their verbal threats, Plaintiff fails to allege facts that indicate that the officers' words amounted to a constitutional violation.

While Plaintiff's claims of verbal harassment alone are insufficient to state a claim under § 1983 on its own, this Court must still consider whether these actions by Defendants unreasonably extended the traffic stop beyond the original basis for the intrusion. Plaintiff alleges that the back and forth between him and the officers, while Plaintiff was still seated in the vehicle, continued for about fifty minutes, while other officers arrived on the scene. (ECF No. 28 at 3). There are two harassment-related actions that, according to Plaintiff, unreasonably extended the traffic stop— shining the flashlight into the vehicle and threatening to bust through the window of the vehicle. First, it is well established in the Sixth Circuit that when an officer shines a flashlight into a vehicle, it does not unreasonably expand the scope of a traffic stop. *See U.S. v. Harper*, 488 Fed. App'x. 62, 66–67 (6th Cir. 2012). Therefore, this action cannot serve as a basis for finding the officer's actions unreasonable.

Second, the Sixth Circuit describes certain actions by police officers during a traffic stop as threshold actions necessary for safety which do not constitute an unreasonable extension of the traffic stop. This includes telling passengers to exit the vehicle. *Md. v. Wilson*, 519 U.S. 408, 414– 15 (1997) (finding that during a lawful traffic stop, an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk); *cf. U.S. v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010) (a police officer's decision to question and ask

for driver or passenger identification during a valid traffic stop is not an unnecessary extension of the stop).

While the courts have not established a definitive period of time after which a traffic stop becomes unreasonable, the length of time, the nature of the extension, and the presence of a reasonable suspicion of criminal activity are crucial to determining reasonableness. *Dorsey*, 571 F.3d at 398–99; *Smith*, 601 F.3d at 542. The Sixth Circuit's decision in *United States v. Stepp* is instructive. 680 F. 3d at 651 (6th Cir. 2012). In *Stepp*, a police officer conducted a traffic stop related to a license mismatch issue for a vehicle with two occupants. *Id.* at 657–58. Even though the questioning only lasted six minutes, the court ruled that the officer unreasonably extended the traffic stop beyond its original purpose when: (1) he deviated from context-framing questions to ask about what gym the driver had previously visited in another city; (2) decided to call the K-9 unit without completing their investigation into the license mismatch issue; (3) failed to complete the traffic citation; and (4) questioned the passenger for two minutes; and. *Id.* at 659–62.

This traffic stop took nearly one hour to complete. Fifty minutes is more than enough time for the officers to conduct the traffic stop and issue Ms. Taylor a citation, if appropriate. At this stage, the extent of the factual information provided to this Court and viewed in a light most favorable to the Plaintiff, only demonstrates that Plaintiff was asked to provide identification and he refused. There are no facts that indicate that Defendant was acting in a way that suggested ongoing or potential criminal activity or that there were materials in the car that would suggest the same. Refusal to answer a police officer's question or listen to their orders alone does not provide a police officer with the reasonable articulable suspicion of criminal activity required to extend a traffic stop beyond its original purposes. *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007). Absent that crucial, legitimate reason to extend a traffic stop, a valid traffic stop quickly

28

escalates into harassment of vehicle drivers and passengers and an abuse of law enforcement power. If gone unchecked, the protections provided by the Fourth Amendment are only further eviscerated.

In this situation, however, the Supreme Court has held fast that law enforcement can demand drivers and passengers exit a vehicle during a traffic stop as a precautionary measure without identifying any specific risk of harm. *Wilson*, 519 U.S. at 414–15; *Ariz. v. Johnson*, 555 U.S. 323, 331 (2009) (finding that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop). Despite the amount of time that passed, the Supreme Court's jurisprudence requires this court to conclude that the Defendants' actions did not constitutes unconstitutional conduct. Therefore, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's claims of harassment and verbal threats during the traffic stop prior to Plaintiff exiting the vehicle.

### c. Use of Force During Removal from Vehicle

Defendants argue that Plaintiff's claims that he was assaulted upon removal of the vehicle are made in a "conclusive fashion" without any "indication whatsoever [of] *how* Plaintiff was threatened or assaulted." (ECF No. 35 at 4) (emphasis in original). The Supreme Court has long held that it is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize" the officer's safety. *Brendlin*, 551 U.S. at 258. Additionally, it is well established that during a lawful traffic stop, an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk. *Wilson*, 519 U.S. at 414–15; *Johnson*, 555 U.S. at 331. The Supreme Court explained that this is reasonable because "[t]he risk of harm to both the

29

police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 414.

At issue, here, however, is whether Defendants used unreasonable force in removing Plaintiff from the vehicle. Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). To determine whether force used by law enforcement was excessive, this Court must apply "an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Williams v. Mauer*, 9 F.4th 416, 438 (6th Cir. 2021) (citing *Brown v. Lewis*, 779 F. 3d 401, 418 (6th Cir. 2015)). A court must balance the consequences to the individual against the government's interest in effectuating the seizure when considering the following factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempt to evade arrest by flight. *Id.*

In the past, the Sixth Circuit has found that police used reasonable force where they took the defendant, who did not resist, by the arm and escorted him away from a stopped vehicle while other officers removed a passenger from the vehicle. *Neal v. Melton*, 453 Fed. App'x 572, 576 (6th Cir. 2011). The court has also held, however, that reasonable force was used when physically removing a motorist from his vehicle after the motorists refused officer commands to exit the car and led the police on a high-speed chase that involved violating numerous traffic laws. *Blosser v. Gilbert*, 422 Fed. App'x 453, 458 (6th Cir. 2011). Conversely, the Sixth Circuit found that excessive force was used where an officer violently yanked an individual who was only passively

30

resisting out of a vehicle during a traffic stop, causing the individual to hit his head on the concrete pavement. *Hodge v. Blount Cnty, Tenn.*, 758 Fed. App'x 584, 588 (6th Cir. 2019). The Court also concluded that excessive force was used where police ordered a non-English speaking driver out of his vehicle, but when the driver did not understand the officers and stayed in the vehicle, the officers "pulled him out of the truck, pulled his jacket over his head, knocked him to the ground, and handcuffed him." *Giannola v. Peppler*, 142 F.3d 433, 433 (6th Cir 1998). These cases demonstrate that the totality of the circumstances around the use of force must be taken into consideration.

Plaintiff alleges that Defendants "opened the passenger door snatching and forcefully removing me from the safety" of the vehicle and slamming him to the "conveyance." (ECF No. 28 at 3, 10–11). Based on the facts alleged, this Court concludes that Plaintiff, as a pro se litigant, has plausibly pled a claim for excessive force. There are no facts in any of the pleadings that indicate that Defendants were suspicious of Plaintiff for having committed a serious crime or that criminal conduct was ongoing, as they had only stopped the vehicle because of Ms. Taylor's traffic violation. Further, there are no facts demonstrating that the safety of the officers or Ms. Taylor might be at risk. Finally, based on the facts alleged, Plaintiff was not actively resisting arrest or attempt to evade arrest by flight. Unlike *Blosser* where the defendant let police on a car chase before being forcefully removed from his vehicle, and where the Sixth Circuit concluded that excessive force had not been used, Ms. Taylor pulled over immediately and Plaintiff never left the vehicle after Office Wallace began the traffic stop. Because this Court takes as true Plaintiff's allegations at the motion to dismiss stage and the lack of any facts to the contrary, this Court find that Plaintiff states a plausible claim for excessive force and **DENIES** Defendants' Motion to

Dismiss as it pertains to Plaintiff's claim that excessive force was used to assault him upon being pulled from the vehicle.

### d. Frisk and Search

Plaintiff states that he was "frisked" and "searched" upon being removed from the vehicle. (ECF Nos. 1 at 1; 28 at 3). Defendants do not directly respond to this claim. In order to frisk an individual, just as in the case of a pedestrian reasonably suspected of criminal activity, police must harbor specific, reasonable suspicion that the person subjected to the frisk is armed and dangerous. *Johnson*, 555 U.S. at 327. There are no facts that indicate that Defendants had reasonable suspicion that Plaintiff was armed and dangerous. In fact, Plaintiff states that when Defendants entered the vehicle to pull Plaintiff out, his phone "flew from [his] lap because [he] did not want any object being misidentified as a weapon." (ECF No. 28 at 10). This indicates that Plaintiff was not armed during the traffic stop. At this stage of the encounter, Plaintiff was simply filming the encounter and had refused to exit the vehicle per the officer's request.

Further, there were no facts pled indicating that Plaintiff could be suspected of any other criminal activity that would provide the officers sufficient probable cause to conduct a full search of his person absent a warrant. *See Bell*, 762 F.2d at 499 ("[A] person by mere presence in a suspected car, [does not] lose[] immunities from search of his person to which he would otherwise be entitled."); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). Plaintiff does state, however, that he was handcuffed upon removal from the vehicle. (ECF No. 28 at 10–11). While being handcuffed does not always correlate to being put under arrest, it is possible that the officers had arrested Plaintiff prior to placing him in

constraints. If that was the case, then Defendants could conduct a search of an individual incident to a valid arrest without a warrant. *U.S. v. Guy*, 1 Fed. App'x 410, 412–13 (6th Cir. 2001).

As detailed more fully below, however, this Court finds that Plaintiff plausibly pleads claims for unlawful arrest based on Plaintiff's outstanding warrants, a seatbelt violation, and obstruction of official business. Taken together, Plaintiff's allegations sufficiently establish a claim that Defendants lacked reasonable suspicion to conduct a frisk and lacked probable cause to conduct a search of his person absent a warrant. Therefore, this Court **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's claim that Defendants unlawfully frisked and searched him upon removal from the vehicle.

### 3. Arrest and Transportation

Plaintiff argues that he was arrested and transported to Warren County Jail on an unlawful basis because Defendants did not have probable cause to arrest him. (ECF No. 1 at 3–4). Further, Plaintiff alleges that Officer Wallace "lied" to the Warren County Jail officials to "coerce the jailer to receive" him. (*Id.* at 55). While Plaintiff includes a copy of the citation issued to him by Defendants, the print detailing the crime charged is illegible. Plaintiff also alleges that he was charged with a seatbelt violation and obstructing official business per Ohio Rev. C. § 2921.31. (ECF No. 28 at 4). Conversely, Defendants focus their response on the fact that Plaintiff had outstanding warrants from outside the City of Franklin, and therefore, it was entirely "reasonable, and in fact constitutional, for police officers to apprehend and detain" Plaintiff. (ECF No. 35 at 5). These facts, taken together, can be liberally construed as Plaintiff raising a claim for unlawful arrest in violation of the Fourth Amendment.

*a. Outstanding Warrants*

To sustain a § 1983 claim for unlawful arrest, a plaintiff must prove that the arresting officer lacked probable cause to complete the arrest. *Halasah v. City. of Kirtland, Ohio*, 574 Fed. App'x 624, 629 (6th Cir. 2014). Whether an officer has probable cause turns on whether at the time of the arrest, the officer had sufficient facts within his or her knowledge to believe that the petitioner has committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). While it is well established that once a police officer has knowledge of an outstanding warrant, he has probable cause to arrest an individual, it is unclear how and when Defendants learned of Plaintiff's outstanding warrants. *U.S. v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005). Plaintiff does not reference the warrants, and the timelines in the Complaint and Ms. Taylor's affidavit do not indicate that Plaintiff ever provided his identification to officers nor that they would have learned of the warrants prior to his arrest. Defendants fail to clarify further this timeline. If that is the case, then Defendants lacked probable cause to arrest him based on his outstanding warrants. Therefore, this Court **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's unlawful arrest claim based on Plaintiff's outstanding warrants.

*b. Seatbelt Violations*

Plaintiff states that when he arrived at Warren County Jail, he was charged with a seatbelt violation and obstructing official business per Ohio Rev. C. § 2921.31. (ECF No. 28 at 4). Under Ohio Rev. C. § 4513.263, an occupant of a vehicle "being operated on any street or highway" commits a civil infraction if they fail to wear a seatbelt. To conduct a traffic, stop and arrest an individual for a seatbelt violation, an officer must have probable cause to believe the infraction was committed. *Gregory v. Burnett*, 577 Fed. App'x. 512, 516 (6th Cir. 2014). Probable cause for a seatbelt violation requires the officer to have seen the individual without their seatbelt while the

34

vehicle was "being operated." *Id.* (holding that plaintiff's §1983 claim was improperly dismissed on summary judgement given the question of fact surrounding whether the officer had witnessed the plaintiff driving with his seatbelt unbuckled). In a later filing, Plaintiff details that both he and Ms. Taylor buckled their seatbelts prior to driving, and Plaintiff only unbuckled his seatbelt after they were pulled over by Officer Wallace. (ECF No. 28 at 1–2). These allegations taken as true, as required at this stage of litigation, indicate that Defendants did not have probable cause to arrest Plaintiff for a seatbelt violation because he was wearing his seat belt while the vehicle was being operated. Therefore, this Court **DENIES** Defendant's Motion to Dismiss as it pertains to Plaintiff's claim for unlawful arrest based on a seatbelt violation.

### c.  Obstructing Official Business

Under Ohio law, obstructing official business requires: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege." *Osberry v. Slusher*, 750 Fed. App'x. 385, 393 (6th Cir. 2018) (citing Ohio Rev. C. § 2921.31). The "act" must be affirmative and consist of more than mere argumentative words even if the speech is rude, abusive, insulting, and profane. *Id.* Mere refusal to provide identification at the officer's request does not support probable cause to arrest an individual for obstruction. *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005). Refusal alongside conduct that indicates an unwillingness to cooperate with the officers may sustain an arrest for obstruction. *Id.* (holding that defendant's aggressive tone and demeanor with the investigating officer and her attempts to prevent further investigation constituted obstruction under Ohio state law); *See also State v. Merz*, 2000 WL 1051837, at *1 (Ohio Ct. App. July 31, 2000) (holding that defendant was guilty of obstructing official business where he refused to provide

identification to officers who questioned him about the dogs he let run loose, verbally abused officers, moved away into his house, and indicated he would physically resist an attempt by police to restrain him);  *U.S. v. Brown*, No. 3:19-cr-39, 2019 WL 5553295 at *21 (S.D. Ohio Oct. 28, 2019) (finding that officer had probable cause to arrest defendant for obstruction when defendant refused to provide identification, walked away from the officer, disregarded the officer's orders, and argued with the officer).

From the facts alleged, this Court can only conclude that, at most, Plaintiff failed to comply with officer orders to exit the vehicle and provide some form of identification. (ECF No. 1 at 2–3). In fact, Plaintiff argues that he asked Officer Wallace to clarify her request for identification, what authority she had to make such demands, and what crime he "was suspected of committing, witnessing or in the act of…." (ECF No. 28 at 3). During this time, Plaintiff was still seated in the vehicle, not attempting to evade arrest, and there are no facts to indicate that Plaintiff verbally abused nor took an aggressive tone with the officers. These facts do not rise to the level of obstruction apparent in other cases. Therefore, this Court **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's charge of obstruction, finding that Plaintiff has alleged sufficient facts to plead he was unlawfully arrested for obstruction of official business.

## IV.    CONCLUSION

This Court has conducted an independent review of the pleadings and arguments. For the reasons discussed above, this Court rules as follows:

**(1)** Plaintiff's Objections to the August 11, 2022 R&R (ECF No. 36) are **OVERRULED**, the August 11, 2022 R&R (ECF No. 38) is **ADOPTED,** and Plaintiff's Second Motion for Entry of Default (ECF No. 19) is **DENIED**.

**(2)** Plaintiff's Objections to the June 21, 2022 R&R (ECF No. 28) are **OVERRULED**, the June 21, 2022 R&R (ECF No. 26) is **ADOPTED**, and Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED** as premature.

**(3)** Pursuant to 28 U.S.C. § 1915A, this Court **DISMISSES** all claims against the City of Franklin, the Franklin Police Department, and to the extent pled, the officer defendants in their official capacities. Plaintiff may **PROCEED** on his claims against the City of Franklin police officers in their individual capacities. Additionally, Defendants' Motion to Dismiss (ECF No. 35) is:

  o **GRANTED** as it pertains to the following actions: (1) the initial traffic stop; (2) Defendants' request for Plaintiff's identification or social security number; (3) Plaintiff's claim that Defendants harassed him by shining a flashlight into the vehicle and threatening to bust through the vehicle's window; and

  o **DENIED** as it pertains to Plaintiff's claims of (1) Defendants unlawfully frisking and searching Plaintiff upon removal from the vehicle; (2) unlawful use of force against Plaintiff when removing him from the vehicle; (3) unlawful arrest based on Plaintiff's outstanding warrants; (4) unlawful arrest based on Plaintiff's seatbelt violation; and (5) unlawful arrest based on allegations that Plaintiff obstructed official police business.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  February 9, 2023**

37