UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

J'TTONALI ONE EYE EL-BEY,
    Plaintiff,

v.

L. WALLACE, *et al.*,
    Defendants.

Case No. 1:21-cv-389
Marbley, C.J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff J'ttonali One Eye El-Bey initiated this civil rights action under 42 U.S.C. § 1983 challenging his arrest following a routine traffic stop. This matter is before the Court on defendants' motion for summary judgment (Doc. 52), plaintiff's response in opposition (Doc. 59), and defendants' reply memorandum (Doc. 61). With leave of Court, the parties also filed supplemental memoranda (Docs. 68, 69).

**I. Background**

On May 24, 2021, plaintiff's partner, Nichole Taylor, was driving a red pickup truck in Franklin, Ohio.[1] Plaintiff rode in the passenger seat beside Taylor. At approximately 11:20 p.m., as Taylor's vehicle approached a traffic-lighted intersection, Taylor observed a police vehicle approaching from the opposite direction. (*See* Doc. 59 at PAGEID 513 for plaintiff's diagram of the intersection). Believing the police vehicle did not intend to stop at the traffic light, Taylor cut her left turn short of the lane. Defendant Lexis Wallace, a Franklin Police Officer and driver of the approaching police vehicle, observed Taylor cut the lane short and initiated a traffic stop of Taylor's vehicle. Taylor pulled her pickup truck into a nearby gas station parking lot. Plaintiff live-streamed and recorded the traffic stop from inside the pickup

---

[1] As many of the facts are undisputed and/or confirmed by the video evidence submitted by both parties, citations to the record will be provided only for direct quotes or facts potentially in dispute.

truck (Doc. 68), and defendants submitted dash cam videos. (Doc. 55).² The Court has viewed all video evidence submitted.

Taylor provided her license and insurance information without incident and ultimately received a written warning for the alleged traffic infraction. Police interaction with Taylor's passenger, however, are the subject of this case.

Defendant Wallace informed plaintiff that she had observed him not wearing his seatbelt in violation of a city ordinance, and she asked for his identification. Although plaintiff contends that it was "highly impossible" that Wallace observed him not wearing a seatbelt while the pickup truck was moving "based on the facts and circumstance including the time of night, while defendant was in a car, plaintiffs in a truck and so called speeding, with t[i]nted windows" (Doc. 59 at PAGEID 512), Wallace testified in her affidavit that she "observed that the passenger in the vehicle was not wearing a seatbelt at the time of the traffic infraction." (Doc. 52-1 at PAGEID 474). In the videos provided, Wallace can be heard informing plaintiff immediately that he violated the law by not wearing a seatbelt so he needs to identify himself.

Plaintiff responded that he needs defendant Wallace to identify herself "up to the standard of the Ohio Revised Code 2921.29 before I answer any of your questions." (Plaintiff's video, Doc. 68, at 1:08).³ Wallace provided her name and badge number but declined to provide

---

² Although both defendant Wallace and defendant Diekman submitted dash cam videos (Doc. 55), defendant Wallace's vehicle was better positioned to capture the events at issue. Therefore, all citations to dash cam videos (Doc. 55) are to defendant Wallace's video.
³ Ohio Revised Code § 2921.29, entitled "Failure to Disclose Personal Information," provides:
    (A) No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following: (1) The person is committing, has committed, or is about to commit a criminal offense. . . . (B) Whoever violates this section is guilty of failure to disclose one's personal information, a misdemeanor of the fourth degree. (C) Nothing in this section requires a person to answer any questions beyond that person's name, address, or date of birth. Nothing in this section authorizes a law enforcement officer to arrest a person for not providing any information beyond that person's name, address, or date of birth or for refusing to describe the offense observed. (D) It is not a violation of this section to refuse to answer a question that would reveal a person's age or date of birth if age is an element of the crime that the person is suspected of committing.

her date of birth. Plaintiff stated that he would not provide his social security number, and Wallace again asked for his name and date of birth, explaining that, because he was not wearing his seatbelt, he was required to provide his name and birth date. Plaintiff informed Wallace she was entitled to that information only after she makes a lawful arrest, and Wallace disagreed.

Wallace requested assistance, and other Franklin Police Officers, also named as defendants in this action, arrived promptly. Other officers asked plaintiff to roll down his window and provide identification, but plaintiff declined. For more than 30 minutes, defendant police officers and plaintiff discussed the law, citizenship, and what information plaintiff was or was not required to provide. Although plaintiff used profane language, called the officers names, and, at one point, challenged the officers to a duel, neither plaintiff nor defendant officers initiated a physical altercation. Plaintiff, who identified himself as "of a sovereign nation," informed defendants that he is "not under your code" and showed but did not give the officers a card he claimed to be his "national identification." (Doc. 68 at 5:02-6:30). Defendants repeatedly requested his name and birth date so they could cite him for the alleged seatbelt infraction and he could "go on [his] way." (*Id.* at 6:10). Plaintiff indicated that he did not "accept" any of defendants' "offers" and told defendant officers to "get lost." (*Id.* at 6:15-6:45).

Approximately 13 minutes after the traffic stop began, plaintiff told defendant officers that he does not have a name but his "title" is "J'ttonali One Eye El-Bey, Moorish American National, Chief Presiding Law Officer, Wilmington, Ohio, 45177-1865." (Doc. 68 at 13:10). He declined to write it down, spell his name, or provide his date of birth. He acknowledges that he "never offered [his] pre-Islamic name." (Doc. 59 at PAGEID 519). As Taylor begged plaintiff to spell his name so they could move on, plaintiff insisted his title could not be spelled as it had to be "titled." (Doc. 68 at 17:40). He later provided an identification number of "AA-222141"

3

(*Id.* at 22:50), but police officers were unable to confirm his identity using that identification number.

After more than 30 minutes, and as Taylor grew increasingly frustrated and anxious to go home, defendants opened Taylor's door and told her to step out of the truck so they could arrest plaintiff for obstructing official business. (Doc. 68 at 30:05; Doc. 55 at 23:07:19). Plaintiff protested, and defendants told plaintiff to unlock his door or they would break the window to arrest him. (Doc. 68 at 30:30; Doc. 55 at 23:07:31). Plaintiff unlocked the door and remained seated while two police officers pulled him from the truck by his arms. (Doc. 55 at 23:07:51). Plaintiff remained upright at all times, and defendants patted him down. The entire traffic stop and arrest were captured by defendant Wallace's dash cam and plaintiff's (and then Taylor's) recording on plaintiff's phone.

Once plaintiff was handcuffed and placed under arrest, defendants obtained his identification from his wallet and learned that his legal name is Jtton Edward Watson. (Doc. 52-1 at PAGEID 476). He had outstanding warrants for his arrest. (*Id.* at PAGEID 477). Defendant Wallace transported him to the jail, but the jail was at capacity and would not accept additional inmates. Wallace issued plaintiff a municipal citation for the alleged seatbelt violation (Doc. 52-2) and a summons for obstructing official business, in violation of § 2921.31.[4] (Doc. 52-3).

The Court previously dismissed some of plaintiff's claims but denied defendants' motion

---

[4] Ohio Revised Code § 2921.31, entitled "Obstructing Official Business," provides:
(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties. (B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

4

to dismiss claims against defendant police officers in their individual capacities for: (1) unlawfully frisking and searching plaintiff upon removal from the pickup truck; (2) unlawful use of force against plaintiff when removing him from the vehicle; (3) unlawful arrest based on outstanding warrants; (4) unlawful arrest based on plaintiff's seatbelt violation; and (5) unlawful arrest based on allegations that plaintiff obstructed official police business. (Doc. 42 at PAGEID 411). Defendants now move for summary judgment on all remaining claims. (Doc. 52).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A dispute about a material fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *King v. City of Rockford*, 97 F.4th 379, 389 (6th Cir. 2024) (quoting *Stoudamire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013)); *Anderson*, 477 U.S. at 248.

The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *King*, 97 F.4th at 389; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986). As the Sixth Circuit recently reiterated:

> Where uncontroverted video evidence "so utterly discredit[s]" one party's version of events, so that no reasonable jury could believe him or her, the facts should be viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 Led.2d 686 (2007). But "[t]o the extent that facts shown in videos can be interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

*King*, 97 F.4th at 389.

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir.

6

2010)).

**III. Defendants' Motion for Summary Judgment Should Be Granted**

Plaintiff's remaining claims are: (1) unlawfully frisking and searching plaintiff upon removal from the pickup truck; (2) unlawful use of force against plaintiff when removing him from the vehicle; (3) unlawful arrest based on outstanding warrants; (4) unlawful arrest based on plaintiff's seatbelt violation; and (5) unlawful arrest based on allegations that plaintiff obstructed official police business. (Doc. 42 at PAGEID 411). To be entitled to summary judgment, defendants must offer admissible evidence sufficient to demonstrate that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law on each of plaintiff's claims. Fed. R. Civ. P. 56(c). The Court will address plaintiff's claims individually

    **A. Defendants' Motion for Summary Judgment on Plaintiff's Unlawful Arrest Claims Should be Granted.**

It has already been determined that defendant Wallace had probable cause to initiate the traffic stop of Taylor's vehicle and that she lawfully requested plaintiff's identification. (Doc. 42 at PAGEID 398-99). However, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "'Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed;' whichever comes first." *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020) (quoting *Rodriguez*, 575 U.S. at 354). "[C]hecking passengers for warrants and brief questioning are permissible as part of a traffic stop." *Id.* (citing *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010)). However, once the traffic-related stop ends, an officer must have "reasonable suspicion" of additional criminal activity to extend the stop. *Id.*

The Fourth Amendment ensures the right to be free from arrest without probable cause.

7

*Osberry v. Slusher*, 750 F. App'x 385, 392 (6th Cir. 2018). A probable cause determination requires examination of the "totality of the circumstances" known to the arresting officer at the time of the arrest. *Id.* (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016)).

In this case, defendant Wallace stopped Taylor's vehicle for an alleged lane violation. However, she also observed plaintiff violating the City of Franklin's seatbelt ordinance. (Doc. 52-1 at PAGEID 474). According to the video plaintiff submitted, Wallace and other officers asked for plaintiff's identification so Wallace could write a seatbelt ordinance citation. (Doc. 68). Indeed, officers told Taylor that "as soon as [plaintiff] gets his citation, you can go on your way" (Doc. 68 at 6:10), and Officer Holland later told plaintiff that "I would love nothing more than for this traffic stop to be over and you guys to go about your way but we have to identify you" (Doc. 68 at 13:06). Because plaintiff refused to provide identification so defendant Wallace could complete the seatbelt ordinance citation, the traffic-related mission for the stop had not been completed by the time of plaintiff's arrest. Thus, both the duration and the scope of the traffic stop were reasonable.

Officers ultimately arrested plaintiff for obstructing official business, in violation of Ohio Revised Code § 2921.31. (Doc. 52-3 at PAGEID 481). The Sixth Circuit has explained probable cause to arrest for obstructing official business in Ohio, as follows:

> Under Ohio law, obstructing official business requires: "(1) an act by the [arrestee]; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege." *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016) (citing Ohio Rev. Code § 2921.31). Importantly (and dispositive) for us here, "Ohio courts have emphasized the importance of the first element, the requirement that the defendant commit an *affirmative* act." *Id.* (emphasis added). This means that [arrestee] "cannot be guilty of obstructing official business by doing nothing or failing to act." *Id.* (quoting *State v. Wellman*, 173 Ohio App.3d 494, 879 N.E.2d 215, 218 (2007)).

8

> Further, short of "fighting words," probable cause cannot be based on [arrestee's] words alone: "Ohio courts have not treated speech alone as an act for purposes of this statute." *Id.*; *D.D.* [*v. Scheeler*], 645 F. App'x [418,] at 425 [(6th Cir. 2016)] ("No matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words." (quoting *City of Cincinnati v. Karlan*, 39 Ohio St. 2d 107, 314 N.E.2d 162, 164 (1974)). In short, "a person may not be convicted of the offense simply by doing nothing." *D.D.*, 645 F. App'x at 426 (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005)).

*Osberry*, 750 F. App'x at 393.

Only the affirmative act element is disputed here. According to the video evidence plaintiff submitted, plaintiff did more than refuse to act, and he clearly engaged in fighting words. Plaintiff not only delayed the lawful traffic stop by more than thirty minutes by refusing to provide his legal name or date of birth so defendant Wallace could write his seatbelt citation, he told the officers they were "dead wrong and dead is what you get," (Doc. 68 at 16:10), repeatedly "banished" the officers and told them to "go away," told the officers to "put your guns up and bully me—I'll fight you right now" (*Id.* at 18:38), challenged the officers to a duel (*Id.* at 18:44), and repeatedly told Taylor not to get out of the truck or tell the officers his name (despite officer's requests for her to do so). These activities constitute the affirmative act required to support probable cause to arrest plaintiff for obstructing official business.

Even if they lacked probable cause to arrest plaintiff, defendant officers are entitled to qualified immunity for plaintiff's arrest. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Murray v. Dep't of Corrections*, 29 F.4th 779, 786 (6th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To avoid a finding of qualified immunity at the summary judgment stage, a plaintiff must demonstrate: "(1) 'that government officials

9

violated a constitutional right,' and (2) 'that the unconstitutionality of their conduct was clearly established when they acted.'" *Id.* (quoting *Beck v. Hamblen Cty.*, 969 F.3d 592, 598 (6th Cir. 2020)). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly[,] and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Shumate v. City of Adrian*, 44 F.th 427, 439 n.4 (6th Cir. 2022) (quoting *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019)). Thus, "even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Phillips v. Blair*, 786 F. App'x 519, 527 (6th Cir. 2019) (quoting *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011)).

Courts have had difficulty discerning the line between mere offensive speech and the affirmative acts sufficient to support an arrest for obstructing official business. As the Sixth Circuit has noted, "[c]ases from this circuit and Ohio courts supply few clear lessons" concerning the affirmative action required for probable cause to arrest for obstructing official business. *Id.* at 527 (finding that qualified immunity shielded police officers who arrested person for obstructing official business where arrestee required the efforts of three officers to pull him from a truck and the struggle "would paint for a reasonable officer an overall picture of resistance rather than cooperation"). "[H]ostile or abusive speech that obstructs officers from fulfilling their duties" may satisfy the affirmative-act requirement where "[t]he complete picture . . . include[d] more than just [arrestee's] refusal to provide information; it also include[d] profanity-laced yelling and finger-pointing at the officer as well as the disruptive character of her speech—*i.e.*, its volume, demeanor, etc." *Lyons v. City of Xenia*, 417 F.3d 565, 574-75 (6th Cir.

10

2005). Ohio courts have reiterated that mere failure to obey an officer's order does not satisfy the affirmative-act requirement, but telling officers to "hold on" and tucking wrists to avoid being handcuffed does, even though it took less than two minutes to effectuate the arrest. *State v. Carrion*, No. C-230070, 2023 WL 8447480, at *3 (Ohio Ct. App. Dec. 6, 2023).

Viewing the facts in plaintiff's favor, defendant officers reasonably believed that plaintiff's arrest for obstructing official business was lawful. Qualified immunity requires the Court to "determine whether the facts of this case parallel a prior decision or not for purposes of determining whether a right is clearly established." *Saalim v. Walmart*, ___ F.4th ___, 2024 WL 1432791, at *4 (6th Cir. April 3, 2024) (cleaned up) (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 660-61 (6th Cir. 2021)). The facts of this case roughly parallel decisions in which federal or state courts sided with the defendants, *Lyons* and *Carrion*, in that plaintiff engaged in hostile and abusive speech, attempted to interfere with Taylor's cooperation, repeatedly told officers to "go away," and provided a purported "title" rather than his legal name. Nevertheless, "in view of the less-than-precise contours of Ohio's affirmative-act requirement," defendants did not violate a clearly established constitutional right by arresting plaintiff for obstructing official business. *See Phillips*, 786 F. App'x at 528.[5]

Accordingly, defendants' arrest of plaintiff for obstructing official business, in violation of Ohio Revised Code 2921.31, is supported by probable cause. Even if it were not supported by probable cause, defendants are entitled to qualified immunity for plaintiff's arrest because they did not violate plaintiff's clearly established constitutional right. Therefore, defendants' motion

---

[5] Defendants also contend that plaintiff's "arrest is further supported by the fact that he had multiple outstanding warrants." (Doc. 52 at PAGEID 468). However, both probable cause and qualified immunity determinations must be based on the officers' knowledge at the time of the arrest. *See Osberry*, 750 F. App'x at 392 (6th Cir. 2018) and *Phillips*, 786 F. App'x at 527. Defendants did not learn that plaintiff had outstanding warrants for his arrest until after he had been arrested for obstructing official business and placed in a police cruiser. (Doc. 52-1 at PAGEID 477).

11

for summary judgment should be granted as to plaintiff's claims for unlawful arrest.

### B. Defendants' Motion for Summary Judgment on Plaintiff's Excessive Force Claim Should be Granted.

Plaintiff next alleges that defendants assaulted him by removing him from the vehicle in which he was a passenger. (Doc. 1 at PAGEID 30). As 42 U.S.C. § 1983 applies only to constitutional or other violations of federal law, the Court previously interpreted plaintiff's claim as one for excessive force in removing him from the pickup truck. (Doc. 42 at PAGEID 403-06).

As the Court explained in denying defendant's motion to dismiss this claim, "it is well established that during a lawful traffic stop, an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk." (Doc. 42 at PAGEID 403-04). In addition, defendants were entitled to remove plaintiff from the truck to effectuate his lawful arrest. The issue here, then, is whether defendants employed unreasonable force in removing plaintiff from the pickup truck.

"The Fourth Amendment's prohibition against unreasonable seizures protects citizens from excessive use of force by law enforcement officers." *Saalim*, 2024 WL 1432791, at *5 (quoting *Palma v. Johns*, 27 F.4th 419, 428 (6th Cir. 2022)). Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, the force used must be objectively reasonable "in light of the totality of the circumstances confronting the defendants." *Williams v. Mauer*, 9 F.4th 416, 438 (6th Cir. 2021). The Court does "not assess the reasonableness of a use of force with 'the 20/20 vision of hindsight,' but instead look[s] to 'the perspective of a reasonable officer on the scene.'" *Saalim*, 2024 WL 1432791, at *5 (quoting *Graham*, 490 U.S. at 396).

12

The Supreme Court enumerated three non-exhaustive factors to guide courts in determining whether an officer's use of force was objectively reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). As to the first factor, severity of the crime, "[c]onduct that is not a violent or serious crime does not permit an officer to use increased force absent other factors." *King v. City of Rockford*, 97 F.4th 379, 394 (6th Cir. 2024) (quoting *Vanderhoef*, 938 F.3d at 277)).

As to the second factor, the degree of force used must be reasonable for the threat to officers or others. For example, "use of a Taser is permissible where a suspect poses an immediate threat in the form of 'violent thrashing,' an 'attempt to hit officers, or by making a display of force.'" *Shumate*, 44 F.4th at 444 (cleaned up) (quoting *Kent v. Oakland Cnty.*, 810 F.3d 384, 391 (6th Cir. 2016)). "However, mere 'agitated hand gestures' and profanity, unaccompanied by threats, fall short of the prototypical behavior that would make an officer fear for his physical safety." *Id.* (quoting *Kent*, 810 F.3d at 391). *See also King*, 97 F.4th at 396 and *Saalim*, 2024 WL1432791, at *5 (same quote).

"To decide whether officers used excessive force, we must balance their safety interests in using the force against an arrestee's liberty interest in avoiding it." *Farris v. Oakland Cnty.*, 96 F.4th 956, 964 (6th Cir. 2024) (citing *Graham*, 490 U.S. at 396). Thus, during a traffic stop, it is reasonable for an officer to take a person's arm and escort him to the hood of the police cruiser, even if the person is in no way resisting the officer's directives. *Neal v. Melton*, 453 F. App'x 572, 576-77 (6th Cir. 2011). *See also Reed v. Campbell Cnty.*, 80 F.4th 734, 750 (6th Cir. 2023) (reasonable to physically escort a non-resisting plaintiff away from a car during a traffic

13

stop, but potentially unreasonable to do so during a warrantless entry into a home to investigate a minor crime or while pointing a gun at plaintiff's head).

Finally, the third *Graham* factor requires the Court to consider whether the suspect was actively resisting arrest or attempting to flee. "When a suspect is actively resisting arrest, . . . police may use reasonable measures, including tasing the individual, to subdue him." *Saalim*, 2024 WL 1432791, at *6 (citing *Rudlaff v. Gillispie*, 791 F.3d 638, 641-42 (6th Cir. 2015)). Although "noncompliance alone does not indicate active resistance," "[a]ctive resistance has been found where 'some outward manifestation—either verbal or physical—on the part of the suspect had suggested volitional and conscious defiance.'" *Id.* (quoting *Shumate*, 44 F.4th at 446). *See King*, 97 F.4th at 395 ("Active resistance 'can be characterized by physical force, a show of force, or verbal hostility coupled with failure to comply with police orders.'") (quoting *Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017)). Simply failing to exit a vehicle when asked is not active resistance, but verbal additions to noncompliance can constitute active resistance where "it was the final straw in a series of consciously-resistive acts, one of which included a statement that the suspect would 'fight the officers so that they would have a reason to kill him.'" *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013) (quoting *Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 94 (6th Cir. 2012). *See King*, 97 F.4th at 396 (examining *Eldridge* and collecting cases).

The crimes at issue in this case include a minor traffic infraction, an alleged seatbelt violation, and misdemeanor obstruction of official business. These are all relatively minor, non-violent crimes. Defendant Wallace stated that defendants asked Taylor and plaintiff to exit the truck "because the stop had been going on for more than thirty minutes and we were beginning to get concerned about the safety of the police officers and Ms. Taylor." (Doc. 52-1 at PAGEID

14

476). Officers remained remarkably patient and calm outside the pickup truck and drew no weapons at any time, stating, "physically fighting him is not ideally what we want to do." (Doc. 55 at 22:55:40).

Taylor, plaintiff, and defendant officers discussed that there was no reason to fear each other (Doc. 68 at 20:05 – 20:20), and Taylor indicated that she did not fear plaintiff (Doc. 1 at PAGEID 31-32). Taylor indicated she was "scared of all of you right now," but officers reassured her that she had nothing to fear from them, and plaintiff interjected that "she ain't scared of me; this is my fiancé, you dummy." (Doc. 68 at 20:20).

However, tensions escalated when officers indicated that they intended to arrest plaintiff. (Doc. 68 at 30:05; Doc. 55 at 23:07). Defendant officers opened Taylor's door and demanded that she exit. She stepped out without incident, aided by an officer's hand on her arm. (Doc. 68 at 30:15 – 30:50; Doc. 55 at 23:07:10 – 23:07:43). Defendants threatened to "bust" the window if plaintiff refused to unlock the passenger door. (Doc. 55 at 23:07:25 – 23:07:55). Plaintiff unlocked the passenger door, but did not exit the vehicle so officers opened the passenger door and pulled plaintiff from the car, by his arms. (Doc. 68 at 30:50; Doc. 55 at 23:07:48). When defendant Rossell opened the passenger door of the vehicle, plaintiff said, "come on, muscle man" (Doc. 68 at 30:56) and failed to exit the vehicle, but he stopped short of physically engaging in an altercation (Doc. 55 at 23:07:45 – 23:07:55). Plaintiff remained upright throughout the arrest. Although officers leaned him against the truck, he was not forcefully pushed against the vehicle; his head and neck area did not contact the vehicle; and he never lost his balance. No officer threatened or engaged in violence, and no weapons of any kind were threatened or displayed by anyone. (Doc. 55 at 23:07:45 – 23:09:10). As Taylor reprimanded

15

plaintiff for not simply "showing his damn I.D.," plaintiff responded that the officers were "criminals" and were "all going down." (*Id.* at 23:08:15 - 23:08:31).

The Court finds that the force used was objectively reasonable under the circumstances. While the crimes at issue were minor, so was the amount of force employed. After 30 minutes of discourse during which officers spoke reasonably and patiently with plaintiff while he swore at, insulted, and threatened them, defendants reasonably grew concerned for their safety. Plaintiff demonstrated verbal hostility coupled with failure to comply with police orders, so defendants pulled plaintiff from the truck by his arms when he refused to exit voluntarily. Defendants did not strike or injure plaintiff, nor threaten or display weapons of any kind. On the facts established by the video evidence, no reasonable juror could conclude that defendants used excessive force in removing plaintiff from the pickup truck. Therefore, defendants' motion for summary judgment should be granted as to plaintiff's claim for excessive force.

### C. Defendants' Motion for Summary Judgment on Plaintiff's Unlawful Search Claim Should be Granted.

Plaintiff's final remaining claim is that he was unlawfully frisked. (Doc. 1 at PAGEID 30). As the Supreme Court has explained:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson*, 414 U.S. 218, 234-35 (1973). A "search incident to arrest 'must be reasonable in its scope and manner of execution.'" *Mitchell v. Hamilton Cnty.*, Nos. 23-5387/5388, 2024 WL 1216403, at *4 (6th Cir. Mar. 21, 2024) (quoting *Maryland v. King*, 569 U.S. 435, 448 (2013)). Reasonableness "requires a balancing of the need for the particular

search against the invasion of personal rights that the search entails." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

In this case, plaintiff was frisked and searched incident to his lawful arrest. He was patted down for approximately one minute while he stood against the truck. (Doc. 55 at 23:08:00 – 23:09:04). Both plaintiff and the arresting officers remained calm throughout the arrest and search. (*Id.*). Officers placed plaintiff in a police vehicle and gave his telephone to Taylor, at plaintiff's request. (*Id.* at 23:08:35). Taylor continued to record plaintiff's arrest. (*Id.* at 23:09:24). Although officers opened plaintiff's wallet in search of his identification, no property was damaged or taken from plaintiff. (*Id.* at 23:09:10). Because the search occurred incident to a lawful arrest and because the search caused only a minor invasion of plaintiff's personal integrity, the search was reasonable under the Fourth Amendment. Accordingly, defendants' motion for summary judgment should be granted as to plaintiff's claim for unconstitutional search.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendants' motion for summary judgment (Doc. 52) be **GRANTED**.

Date: 4/25/2024

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| J'TTONALI ONE EYE EL-BEY, <br>     Plaintiff, <br><br> vs. <br><br> L. WALLACE, *et al.*, <br>     Defendants. | Case No. 1:21-cv-389 <br><br> Marbley, C.J. <br> Litkovitz, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).