**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| J'TTONALI ONE EYE EL-BEY, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:21-cv-00389 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Karen K. Litkovitz |
| L. WALLACE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This Matter is before this Court on the Magistrate Judge's Report & Recommendation ("R&R") (ECF No. 72) on a Motion for Summary Judgment on behalf of Defendants City of Franklin Police Officers L. Wallace, G. Rossell, Butler, Holland, S. Davis, and E. Diekman, in their individual capacities (collectively, the "City Defendants") (ECF No. 52). For the reasons set forth below, Plaintiff's Objections to the R&R (ECF No. 73) are **SUSTAINED IN PART AND OVERRULED IN PART**: **OVERRULED** as to the "second seizure" claim and the request to attach new documents and **ADOPTED** as to Plaintiff's arrest. Accordingly, this Court **ORDERS**:

- The underlying R&R (ECF No. 72) is **ADOPTED IN PART AND REJECTED IN PART**:

    o **ADOPTED** as to Plaintiff's excessive force claim; and

    o **REJECTED** as to Plaintiff's unlawful arrest and search claims.

- The City Defendants' Motion for Summary Judgment (ECF No. 52) is **GRANTED IN PART AND DENIED IN PART**:

    o **GRANTED** as to excessive force; and

    o **DENIED** as to the legality of Plaintiff's arrest and search.

## I. BACKGROUND

### A. Facts

This Court generally adopts the Second R&R's background (see ECF No. 72), but highlights a few key facts for purposes of this analysis. On May 24, 2021, Plaintiff was riding in the passenger seat as his fiancé, Ms. Taylor, drove to pick up contact solution when Ms. Taylor allegedly "cut her left turn short of the lane" and so was pulled over by an approaching police vehicle. (*Id.* at 1). After initiating the traffic stop for Ms. Taylor's violation, Defendant Wallace also requested Plaintiff's identification to issue him a citation as well, as she had allegedly observed him not wearing his seatbelt during Ms. Taylor's traffic infraction, in violation of a city ordinance. (*Id.* at 2). While Plaintiff told the City Defendants his Islamic name and identification number, he refused to give them his American National identification card, spell the Islamic name he provided verbally, or provide his date of birth, as required by Ohio state law. In addition, the identification number he read did not register in the system. (*Id.* at 3–4). Defendant Wallace eventually called for back-up assistance, but Plaintiff continued to refuse to identify himself in accordance with the governing statute. (*Id.*).

This back and forth extended for over thirty minutes, with Plaintiff asserting that he is "not under [their] code" and that the City Defendants did not have jurisdiction over him. (*Id.*). The situation escalated a bit, as Plaintiff began to use profanity toward the City Defendants and challenged the City Defendants to a "duel," in response to which they threatened to break Ms. Taylor's car window so they could arrest him for obstruction due to his failure to identify. (*Id.* at 4, 15). Eventually, Plaintiff unlocked the passenger door, and Defendant Rossell and another City Defendant pulled him out by his arms and leaned him against Ms. Taylor's truck in order to arrest him. (*Id.* at 15).

### B. Procedural History

This Court summarized the procedural history of this case in depth in its Motion to Dismiss Order (ECF No. 42 at 4–6), but, as noted above, recaps the relevant aspects here. After getting through a few complaint and service-related issues, Defendants moved to dismiss the entirety of Plaintiff's claims in his complaint and amended complaint. (*See* ECF No. 35). This Court dismissed "all claims against the City of Franklin, the Franklin Police Department, and to the extent pled, the officer defendants in their official capacities" but generally allowed Plaintiff to bring claims against "the City of Franklin police officers in their individual capacities." (ECF No. 42 at 37). As to these latter claims, this Court allowed some to proceed but granted Defendants' request to dismiss as to some. (*Id.*). Specifically, Defendants' Motion was:

> **GRANTED** as it pertains to the following actions: (1) the initial traffic stop; (2) Defendants' request for Plaintiff's identification or social security number; (3) Plaintiff's claim that Defendants harassed him by shining a flashlight into the vehicle and threatening to bust through the vehicle's window; and
>
> **DENIED** as it pertains to Plaintiff's claims of[:] (1) Defendants unlawfully frisking and searching Plaintiff upon removal from the vehicle; (2) unlawful use of force against Plaintiff when removing him from the vehicle; (3) unlawful arrest based on Plaintiff's outstanding warrants; (4) unlawful arrest based on Plaintiff's seatbelt violation; and (5) unlawful arrest based on allegations that Plaintiff obstructed official police business.

(ECF No. 42 at 37).

A few months later, the Defendants sought and received leave to file a dash cam video, and moved for summary judgment on Plaintiff's remaining claims. (ECF Nos. 51, 52, 54). At this point, the remaining Defendants include City of Franklin Police Officers L. Wallace, G. Rossell,[1] Butler, Holland, S. Davis, and E. Diekman, in their individual capacities ("the City Defendants"). Shortly thereafter, Plaintiff attempted to admit into evidence the live stream of his and Ms. Taylor's

---

[1] At times, Defendant G. Rossell's name is listed as "Grossel" due to the spelling on the docket's party list. But it is clear that this is a clerical error, so this Court uses the proper spelling of "Rossell."

interactions with the City Defendants and, with the assistance of an appointed federal public defender, was able to do so.  (ECF Nos. 57, 63, 66, 67, 68).  Using the parties' briefing and the video footage, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the City Defendant's request for summary judgment be granted as to all of Plaintiff's remaining claims.  (ECF No. 72).  Plaintiff objected to aspects of the R&R (ECF No. 73), and this Court lays out these objections below.  The City Defendants responded to Plaintiff's objections, so the underlying R&R (ECF No. 72) and the City Defendants' Motion for Summary Judgment (ECF No. 52) are ripe for this Court's review.

## II. STANDARD OF REVIEW

As is relevant to the current procedural posture, a district court reviews de novo any aspect of a magistrate judge's R&R to which a party properly objects.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  A fact is deemed material if it "might affect the outcome of the lawsuit under the governing substantive law."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail[.]'"  *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party.  *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

4

To prevail on his § 1983 claim against the City Defendants, Plaintiff must show that at least some of the City Defendants are not entitled to the affirmative defense of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818 (1982). When qualified immunity is raised, a court must decide, in no specific order: (1) whether, based upon the applicable law, a constitutional violation occurred; and (2) whether that violation involved a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To defeat summary judgment, a plaintiff must demonstrate that both questions yield a "yes" answer. *Pearson*, 555 U.S. at 236. And because qualified immunity is an individual defense, this Court must "assess each actor's liability on an individual basis." *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020).

### III. LAW & ANALYSIS

As discussed, the Magistrate Judge recommended that the City Defendants' request for summary judgment be granted in full. (*See, e.g.*, ECF No. 72 at 7). In so recommending, the Magistrate Judge concluded that: (1) Plaintiff was lawfully arrested because the City Defendants had probable cause to arrest Plaintiff for obstructing official business and that, regardless, they are entitled to qualified immunity (*id.* at 9); (2) the force used on Plaintiff to remove him from Ms. Taylor's vehicle was reasonable in light of the circumstances, so Plaintiff was not subject to excessive force (*id.* at 16); and (3) Plaintiff was frisked and searched incident to a lawful arrest, and the search was reasonable (*id.* at 17).

Plaintiff's objections to the Magistrate Judge's R&R are multi-fold. First, Plaintiff argues that the R&R "fails to take into account the legality of" the City Defendants' "second seizure" of Plaintiff. (ECF No. 73 at 1). Plaintiff also seeks leave to submit as exhibits two new documents. Lastly, Plaintiff takes issue with two aspect of the R&R's treatment of the seatbelt citation analysis:

(1) the R&R "failed [to] address, analysis, [and] scrutinize" the grounds for Plaintiff's seatbelt citation as compared to the Ohio law Plaintiff allegedly violated; and (2) the R&R misconstrued the temporal element of when Defendant Wallace needed to have seen Plaintiff without a seatbelt on to constitute probable cause for his citation. (*Id.* at 1). This Court takes these in turn.

### A. Defendant's Alleged Second Seizure of Plaintiff

Plaintiff makes just one reference to a "second seizure" that the R&R did not contemplate. (ECF No. 73 at 1). But the Magistrate Judge addressed the legality of both of the seizures that occurred during Plaintiff's interactions with the City Defendants: (1) his arrest (ECF No. 72 at 7–12); and (2) the use of force (*id.* at 12–16). If Plaintiff is attempting to challenge a seizure other than these two, this attempt fails for two reasons: (1) this Court is unsure what seizure Plaintiff is referring to and so is unable to adjudicate such a claim; and (2) Plaintiff may not raise a new argument for the first time in an objection to an R&R, *Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

### B. Plaintiff's Attempt to Include Additional Documents

Similar to potentially raising a new argument via R&R objections, Plaintiff also seeks to include two new documents: (1) a Franklin County Police Department report, including Defendant Wallace's "case narrative" of her citation and arrest of Plaintiff (ECF No. 73, Ex. A); and (2) a document showing that Plaintiff's seatbelt infraction was dismissed (ECF No. 73, Ex. B). But generally speaking, "a party may not … marshal evidence before a District Judge that was not fairly presented to the magistrate judge." *Marr v. Foy*, No. 1:07-cv-908, 2010 WL 3061297, at *4 (W.D. Mich. Aug. 3, 2010) (cleaned up); *see also United States v. Church*, No. 19-1528, 2020 WL 2494431, at *3 (6th Cir. Apr. 22, 2020) (district court did not abuse its discretion in holding that defendant could not rely on evidence presented for the first time as exhibits to objections to the

report and recommendation). Regardless, this Court is aware of most of the information provided in these documents, as the case narrative aligns with other information properly in front of this Court, such as the City Defendants' retelling of the traffic stop and arrest and the body camera footage. Regarding the Franklin Municipal Court document dismissing Plaintiff's seatbelt citation, as this Court explains below, this Court finds Plaintiff's arrest to be legally questionable even without this evidence. So, while relevant, specific R&R objections are not the proper forum for this evidence.

### C. Legality of Plaintiff's Arrest

#### 1. *Constitutional Violation*

In the context of a § 1983 claim, the lawfulness of an arrest depends on whether an officer had probable cause to effectuate that arrest. *See, e.g.*, *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) ("[I]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause."). This Court's analysis of this specific arrest is grounded in the understanding that that Plaintiff was arrested for obstructing official business, not for the seatbelt infraction or his other outstanding warrants. (*Compare* ECF No. 52 at 4 ("Plaintiff was not arrested for anything to do with this seatbelt violation. Instead, Plaintiff was arrested for—and ultimately a summons was issued for—violating Ohio Rev. Code. § 2921.31 for obstructing and delaying official business."), *with* ECF No. 59 at 3 ("Plaintiff was unlawfully [subjected to a full custodial] arrest based on the seatbelt accusation absent probable cause.")). Indeed, the City Defendants admit that they "did not become aware of those outstanding warrants until Plaintiff was removed from the pickup truck and they were able to ascertain his actual identity"—that is, until after Plaintiff was already arrested for his alleged obstruction. (ECF No. 52 at 11–12).

That said, whether Plaintiff could properly be arrested for obstructing official business turns on whether there was probable cause supporting the underlying seatbelt violation. *See Gregory v. Burnett*, 577 F. App'x 512, (6th Cir. 2014); (*See* ECF No. 42 at 34). This is so because, in order for one to be obstructing official business, the official must be "acting in the performance of a lawful duty[.]" *Osberry v. Slusher*, 750 Fed. App'x. 385, 393 (6th Cir. 2018) (citing Ohio Rev. C. § 2921.31). Following the logic set up by the facts here, the "official business" Plaintiff was allegedly obstructing was the City Defendants' attempt to identify him in order to cite him for a seatbelt violation. So, there would be no valid "official business" to obstruct if the City Defendants were not performing a "lawful duty"—such as by citing Plaintiff for an offense without probable cause. And based on the record before this Court, this question presents a genuine dispute of material fact.

Ohio's seatbelt requirement prohibits a passenger from "[o]ccupy[ing] … a seating position on the front seat of an automobile *being operated* on any street or highway unless that person is wearing all of the available elements of a properly adjusted occupant restraining device," which includes one's seatbelt. Ohio Rev. Code § 4513.263(1), (3) (emphasis added). As the Sixth Circuit has made clear, probable cause for violation of this section "requires the officer to have seen the individual without their seatbelt while the vehicle was 'being operated.'" *Gregory*, 577 F. App'x at 516; (*See* ECF No. 42 at 34–35).

According to Defendant Wallace, she "observed that the passenger in the vehicle [Plaintiff] was not wearing a seatbelt at the time of the traffic infraction." (ECF No. 52-1 at PageID 474). But Plaintiff disagrees, consistently asserting that he and Ms. Taylor wore their seatbelts while the car was being operated and that he unbuckled his seatbelt only once the car stopped after they were pulled over. (ECF No. 28 at 1-2; ECF No. 73 at 2). While video footage confirms that Defendant

8

Wallace engaged with Plaintiff about the alleged seatbelt infraction at the beginning of the traffic stop (ECF No. 72 at 2), no such footage exists as to whether Plaintiff had a seatbelt on while the car was "being operated." So, as "videos do not show all relevant facts," the facts not depicted by video "should be viewed in the light most favorable to the non-moving party." *King v. City of Rockford*, 97 F.4th 379, 389 (6th Cir. 2024) (quoting *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)). Viewing the facts as much based on the parties' evidence and arguments, a reasonable jury could find that no City Defendant had probable cause to arrest Plaintiff based on Defendant Wallace's belief Plaintiff was riding in Ms. Taylor's car without his seatbelt buckled. So, there is a question of fact regarding whether Plaintiff was unlawfully arrested in violation of his Fourth Amendment rights.

### 2. *Clearly Established*

If such a violation occurred, it was contrary to a clearly established constitutional right. As the City Defendants admit, they "spen[t] most of their time on the constitutionality of their actions in the traffic stop and the subsequent lawful arrest of Plaintiff for violating Ohio law." (ECF No. 52 at 8). Indeed, the City Defendants summarily dispose of the "clearly established" question, stating that "even if" "the circumstances in this case … rise to the level of a constitutional violation[,] … there is no existing case law from the Sixth Circuit that makes it so clear that the conduct of the City Defendants offended the Constitution." (*Id.* at 14).

But that conclusion is premised on their view of the facts—that their arrest of Plaintiff was lawful—which this Court cannot accept at this point in the litigation. To the contrary, this Court finds that whether there was probable cause for Plaintiff's arrest turns on a question of fact. And the right to be free from arrest without probable cause is clearly established in this Circuit. *See, e.g.*, *Est. of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Radvansky v. City of*

9

*Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005); *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009).

### 3. Involvement in Arrest

Having established that Plaintiff's retelling of his arrest depicts a violation of his clearly established constitutional right, this Court must evaluate which of the City Defendants were individually involved in the arrest. An arrest is a "deprivation of liberty under the authority of law." *Manning v. Jarnigan*, 501 F.2d 408, 410 (6th Cir. 1974) (quoting *United States v. Baxter*, 361 F.2d 116, 118–19 (6th Cir. 1966)). Defendant Wallace appears to have been "directly involved in the decision to arrest" plaintiff by way of her claiming to have seen Plaintiff without his seatbelt on during Ms. Taylor's traffic infraction and calling for backup to effectuate the seatbelt citation. *Harris v. City of Saginaw, Michigan*, 62 F.4th 1028, 1036 (6th Cir. 2023). But it does not appear that Defendant Wallace physically arrested Plaintiff, so this Court considers the liability of the other City Defendants: Rossell, Butler, Holland, Davis, and Diekman.

Importantly, no filing makes clear who physically arrested Plaintiff. The City Defendants explain that "[w]e … asked Ms. Taylor and [Plaintiff] to step out of the pickup truck" and "Officer Rossell opened the passenger door of the vehicle, grabbed the passenger by the arm, and removed him from the pickup truck[.]" (ECF No. 52-1 at 4–5). But names are not used when it comes to the actual arrest of Plaintiff: Plaintiff "was quickly removed from the vehicle, placed in handcuffs, and placed under arrest" and "was placed in the back of [Defendant Wallace's] cruiser." (*Id.*). Additionally, "Officer Holland told Ms. Taylor and [Plaintiff] that [Plaintiff] had violated the law by not wearing his seatbelt … and that if he refused to provide his information and continued to act hostile, he would be transported to the Warren County Jail for obstructing official police business." (*Id.* at 4). According to Ms. Taylor's affidavit, "the back-up officers" were involved

10

in the arrest of Plaintiff by threatening to "bust the window" of the vehicle, and using "full scare tactics." (ECF No. 1 at 2). And Plaintiff alleges that Defendant Rossell and two to three other officers attempted to open the passenger side door in an attempt to arrest him, but that he "could not see name tags" for the others. (ECF No. 28 at 10)).

As the Sixth Circuit has explained, "[t]here is no line in the liability sand separating … officers who should have known probable cause did not exist from the decisionmaker." *See Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) ("[O]fficers [following orders] … may be held liable under § 1983 if there is a reason why any of them should question the validity of that order."). Indeed, the Sixth Circuit has "gone as far as holding that 'liability can attach to non-arresting officers[.] [T]he inquiry still turns on probable cause for the arrest itself.'" *Harris*, 62 F.4th at 1036 (quoting *Gardner v. Evans*, 920 F.3d 1038, 1064 (6th Cir. 2019)). Based on the facts alleged, this Court finds that Defendants Wallace, Rossell, and Holland were unequivocally personally involved in Plaintiff's arrest. And given that Plaintiff also alleged that two to three others were involved, it is up to the trier of fact to determine whether Defendants Butler, Davis, and Diekman were involved. So, none of the City Defendants are entitled to qualified immunity.

### D. Impact of Arrest Question of Fact

This Court's finding that there is a genuine question of material fact as to the lawfulness of Plaintiff's arrest for obstruction impacts other aspects of Plaintiff's claims to varying degrees.

*1. Frisk and Search*

Plaintiff also prevailed on his frisk and search claim at the motion to dismiss stage. (*See* ECF No. 42 at 33). Because individuals have a clearly established right "to be free from unreasonable searches, including a warrantless search in the absence of exigent circumstances or some other warrant exception," *McKenna v. Edgell*, 617 F.3d 432, 440 (6th Cir. 2010), officers

11

are generally required to obtain a valid search warrant prior to conducting a search, *Katz v. United States*, 389 U.S. 347, 357 (1967).  The City Defendants hang their hat on their frisk and search of Plaintiff falling under an exception to this general rule, as they assert the search was "incident to a valid arrest" because "Plaintiff was lawfully arrested for obstructing official business."  (ECF No. 52 at 13 (citing *Chimel v. California*, 395 U.S. 752, 762–63 (1969)).  But as established above, whether Plaintiff's arrest was lawful remains an open question.  (*Supra* pp. 7–11).  This Court cannot conclude that any search resulting from his arrest necessarily falls under this exception, let alone that such search was reasonable.  As such, summary judgment on Plaintiff's unconstitutional search claim is inappropriate as to all of the City Defendants.

### 2. Excessive Force

Plaintiff also claims that the City Defendants—specifically, Defendant Rossell—used excessive force while removing him from Ms. Taylor's car during the traffic stop and "slamm[ing him] to the conveyance[.] "  (ECF No. 28 at 10).  This Court has already held that "no violation of the Fourth Amendment occurred when Defendants conducted the traffic stop after witnessing Ms. Taylor commit a traffic violation, which Plaintiff also admits occurred."  (ECF No. 42 at 22).

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. CONST. AMEND. IV; *Graham v. Connor*, 490 U.S. 386, 388 (1989).  "[A]n officer seizes a person when he uses force to apprehend [them]." *Torres v. Madrid*, 141 S. Ct. 989, 993 (2021).  "Thus, to be constitutional, [the force] must be reasonable," not excessive. *Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020); *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

Because "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car[,] … an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" even if "there is no such

12

reason to stop or detain the passengers." *Maryland v. Wilson*, 519 U.S. 408, 413–15 (1997). And Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

As to this physical coercion, the question is whether a defendant's force was reasonable "in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Williams v. Mauer*, 9 F.4th 416, 438 (6th Cir. 2021) (citing *Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015)). Hence, qualified immunity is inappropriate on an excessive force claim where an officer's use of force was objectively unreasonable, which turns on: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*; *Graham*, 490 U.S. at 396.

Generally speaking, this Court is not without guidance as to what is considered "reasonable." For example, an officer can, during a traffic stop, take a person's arm and escort him to the hood of a police car, even if the person is in no way resisting the officer's directives. *Neal v. Melton*, 453 F. App'x 572, 576–77 (6th Cir. 2011). It may be reasonable physically to escort a non-resisting plaintiff away from a car during a traffic stop, but it may not be so during a warrantless entry into a home to investigate a minor crime or while pointing a gun at plaintiff's head. *Reed v. Campbell Cnty.*, 80 F.4th 734, 749–50 (6th Cir. 2023). And while "[t]he existence of probable cause is not dispositive of the issue of whether the [City] Defendants used excessive force on Plaintiff[,] … it is also true that the use of excessive force is not permissible even if there was probable cause to arrest." *Barnett v. Sandford*, Case No. 2:04-cv-1113, 2006 WL 1722419, at *2 (S.D. Ohio Jun. 22, 2006).

13

Plaintiff's excessive force claim does not rise and fall with the lawfulness of his arrest in the same way as his frisk and search claim. That said, Plaintiff's arrest is woven into the *Graham* factors by way of the first and third factors, so it is nonetheless relevant to this claim as well. As to the first factor, Plaintiff's "crimes" at issue at the time of the use of force were, allegedly, a seatbelt infraction and obstructing official business. "Conduct that is not a violent or serious crime does not permit an officer to use increased force absent other factors." *King v. City of Rockford*, 97 F.4th 379, 394 (6th Cir. 2024) (quoting *Vanderhoef v. Dixon*, 938 F.3d 271, 277 (6th Cir. 2019)). So, even if this Court was to accept that such crimes were at issue, this factor would cut against the reasonableness of any use of force. But this is particularly so where, as here, it is up to a jury to decide if either of the underlying crimes were, in fact, "at issue."

Regarding the second factor, whether a reasonable officer would consider Plaintiff an immediate threat to his or other people's safety, the facts vary. In her affidavit, Ms. Taylor said that she was not scared of Plaintiff but rather that they "were harassed and threatened" by the City Defendants, and that she "was afraid off [sic] the officers" at the point the officers requested she exit the vehicle. (ECF No. 1 at 2–3). In Ms. Taylor's view, Defendant Wallace "immediately called for back-up," seemingly unrelated to any threat. (*Id.* at 2). To the contrary, Defendant Wallace explains that she requested additional support due to Plaintiff's "aggressive and hostile" behavior, and that Plaintiff eventually "challenged" two of the officers "to a duel." (ECF No. 52-1 at 3). After "Plaintiff grabbed Ms. Taylor and berated her for talking to the City Defendants," the City Defendants "informed Ms. Taylor that she needed to get out of the vehicle for her own safety[.]" (ECF No. 52 at 10).

As to the third factor, the parties disagree about whether Plaintiff was resisting arrest. In Plaintiff's view, "resisting arrest is only a crime when arrest is lawful," and Plaintiff attempted to

14

comply with the City Defendants' requests for identification by providing his Islamic name and identification number. (ECF No. 59 at 14–15). Plaintiff therefore claims to have not "actively resist[ed] or attempt[ed] to evade." (*Id.* at 15). But in the City Defendants' view, Plaintiff unnecessarily dragged out the traffic stop, refusing to exit the vehicle upon request and becoming "rasher and more noncompliant" as time went on, such as by "berating" the officers. (ECF No. 52 at 10; ECF No. 52-1 at 2). This behavior occurred despite warnings that "if he refused to provide his information and continued to act hostile, he would be transported to the Warren County Jail for obstructing official police business." (ECF No. 52-1 at 4). After over thirty minutes, "Lieutenant Bowling asked Ms. Taylor to step out of the vehicle so that she would remain safe while we arrested the passenger for obstructing official business." (*Id.*).

Resistance can be active or passive, and "when a plaintiff's actions do 'not follow the typical course of active resistance,' we are more inclined to deny qualified immunity." *Kelly v. Sines*, 647 F. App'x 572, 575 (6th Cir. 2016) (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013)). Noncompliance, such as refusing to exit a vehicle when asked, is not active resistance, but the nature of such refusal may change when coupled with other safety considerations, such as verbal hostility or after a high-speed chase. *See, e.g.*, *King*, 97 F.4th at 395 (verbal hostility); *Eldridge*, 533 F. App'x at 534 (quoting *Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 94 (6th Cir. 2012)) (finding active resistance after a "series of consciously-resistive acts" including "a statement that the suspect would 'fight the officers'"); *Blosser v. Gilbert*, 422 Fed. App'x 453, 458 (6th Cir. 2011) (reasonable physically to remove an individual who was resisting commands to exit the car after high-speed chase involving numerous traffic violations).

"The general consensus among [Sixth Circuit] cases is that officers cannot use force … on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest." *Grawey*

15

*v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009). And under Ohio law, the mere act of fleeing or backing away from an officer attempting to effect an unlawful arrest does not amount to resisting arrest. *See State v. McCullough*, 61 Ohio Misc. 2d 607, 610, 580 N.E.2d 1180, 1182 (Ohio Mun. Ct. 1990) (holding that the defendant's flight from an officer did not amount to resisting arrest where the officer lacked probable cause to arrest the defendant, regardless of whether or not the officer had reasonable suspicion); *see also State v. Raines*, 124 Ohio App. 3d 430, 432, 706 N.E.2d 414, 415 (Ohio Ct. App. 1997).

Plaintiff is correct that "resisting arrest is only a crime when arrest is lawful." *See Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2009) ("[A] lawful arrest is a necessary element of a conviction for resisting arrest."), *abrogated on others ground by Wallace v. Kato*, 549 U.S. 384 (2007). But Plaintiff was not charged with resisting arrest; Plaintiff was charged with obstructing official business. And while there is a question regarding whether Plaintiff was properly under arrest such that he could have been "resisting" an arrest, the Sixth Circuit has held that "[a] plaintiff's resistance to an officer's commands is relevant" to an excessive force analysis "even if the officers were not attempting to arrest him." *Kelly*, 647 F. App'x at 575 (discussing *Caie*, 485 F. App'x at 96 (finding use of a taser in response to uncooperativeness to be reasonable over the plaintiff's argument that he was not being arrested)).

Plaintiff's resistance consisted of partial noncompliance and otherwise entirely verbal, though the verbal part included threats of physical action, including offering to fight the City Defendants, and asking them to take him up on his offer to "duel." As to the compliance aspect, it is true that Plaintiff identified himself in some capacity by providing his Islamic name and identification number. But he was unwilling to hand the City Defendants this identification card, so they were unable to capture his name spelled correctly. And the information they were able to

16

capture—the identification number—did not register in their system as a proper identification. So, Plaintiff was generally noncompliant with the City Defendants' requests.

While this Court cannot say that this was a glaringly threatening situation—Plaintiff remained in his vehicle and unable to touch the officers for the duration of the stop—in the context of this circuit's case law, the force used was not excessive. Compare Plaintiff's situation to that in *Reed*, in which an officer used potentially "totally gratuitous" uses of force by pointing a gun to Reed's head and pulled him out of his house without a warrant and arguably without exigent circumstances or any reasonable suspicion or threat. 80 F.4t at 749 (quoting *Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004)). Instead, this situation is more akin to that in *Neal*, wherein the Sixth Circuit held that there was no unreasonable force deployed when an officer took a non-resisting plaintiff's arm and escorted him away from a car during a traffic stop. 453 F. App'x at 576–77.

Taking the *Goodson* factors in aggregate, Defendant Rossell's use of force—pulling Plaintiff out of his vehicle by his arm—does not rise to the level of a constitutional violation.

## IV. CONCLUSION

Based on the reasoning set forth above, Plaintiff's Objections to the R&R (ECF No. 73) are **SUSTAINED IN PART AND OVERRULED IN PART**: **OVERRULED** as to the "second seizure" claim and the request to attach new documents and **ADOPTED** as to Plaintiff's arrest. Resultingly, this Court **ORDERS** as follows:

17

- The underlying R&R (ECF No. 72) is **ADOPTED IN PART AND REJECTED IN PART**:

    - **ADOPTED** as to Plaintiff's excessive force claim; and

    - **REJECTED** as to Plaintiff's unlawful arrest and search claims.

- The City Defendants' Motion for Summary Judgment (ECF No. 52) is **GRANTED IN PART AND DENIED IN PART**:

    - **GRANTED** as to excessive force; and

    - **DENIED** as to the legality of Plaintiff's arrest and search.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 6, 2024**